No. 228?.—GEORGE HUBENER, etc., v. THE NEW ORLEANS AND CAR-
ROLLTON RAILROAD COMPANY et al.

In this case the evidence establishes that a small boy, eight years old, a son of the plaintiff, attempted, while the steam car was in motion, on the way from New Orleans to Carroll-ton, to jump from the ground near the track to the platform of the car; that he was thrown from the car to the track, and one of his legs cut entirely off by the wheel of the car. It is further shown that shortly before the accident he was told by a person on the car not to attempt to get on, that he would get hurt, etc.; that the boy was not a pas- · senger on the car, which had then left the station and was in motion on the track:

Held—That the accident having occurred to a person, not a passenger, without any fault or blame on the part of those in charge of and running the cars, the company was not there-fore liable for the damages caused by the injury which such person had received on account of the accident.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley, J.*
*J. B. Cotton & Levy*, for plaintiffs and appellees. *L. E. Simonds*, for defendants and appellants.

This case was tried by a jury in the court below.

HOWE, J. Action for damages alleged to have been caused by care-lessness of defendants in running over the child of plaintiffs, aged eight years, and cutting off one of his legs. Verdict and judgment in favor of plaintiff, George Hubener, as natural guardian of the child, for $7500, and in his own right for $2500. Appeal by defendants.

The child, Charles Hubener, testified that he was coming down St. Charles street in one of the horse cars of the company; that some ladies got in, and he rose and gave them his seat, and went out on the front platform; that while there another boy crowded him off; he fell backwards, yet fell on his face. This was near Calliope street. He saw the steam train coming out of the depot at Tivoli Circle before he fell. He then stumbled, according to his own account, backwards under the wheels of this upward bound steam train, and suffered the injury from which the suit originated.

The following questions and answers are taken from the record of his testimony:

"Question. As you fell from the car, you say you fell backwards from the platform?

"Answer. Yes, sir.

"Q. And your legs, as you say, fell over on the steam car track?

"A. Yes, sir.

*           *           *           *           *           *                    *           *

"Q. At the time the car ran over you, were you standing up with one foot out, or were you on the ground, fallen

"A. I stumbled.

"Q. But did you stumble and fall?

"A. I stumbled off the horse car, over the middle horse car track, with my leg on the steam track."

It is clearly shown by a witness of plaintiffs that the distance over which the child declared he thus "stumbled backwards," was nine-

teen feet eight and one-fourth inches. It was shown, also, to be made up as follows: From the down horse track to the up horse track, six feet; up horse track, in width, four feet eight and one-half inches; from up horse track to river or left side of steam track, about nine feet; and that between the tracks there were draining gutters, and between the up horse track and the steam track there were piles of rubbish, some as high as two feet. But, furthermore, the evidence establishes that the child was run over on the right hand side of the steam track, going up, or the swamp side, which would increase the distance over which he stumbled backwards to about twenty-four feet, or as a witness for plaintiffs says (page 468), twenty-six and one-half feet. And it must be further noticed that to have got from the car from which he was pushed to the rail on which his leg was crushed, he must not only have stumbled backwards over two gutters, two sets of railway tracks and some piles of rubbish, but must have passed over or under or around a steam train, by one of the rear cars of which he was injured, his leg lying on the right hand or "swamp side" rail.

We apprehend that we shall not be asked, in earnestness, to believe this story. Not that the poor boy has with design told a falsehood—it is not necessary to say that—but he was a little child when the accident occurred, and he was still a child when the trial took place, about a year after. "When a child is a witness," says Mr. Ram in his Treatise on Facts, page 151, "it will be natural to receive its evidence with proper caution. A child may be very quick to perceive aright some things which it sees or hears; but from want of knowledge or experience it may perceive imperfectly other things it sees or hears. In seeing it may mistake one thing for another, and in hearing may misunderstand words, and for those which it heard may substitute others of a very different meaning. And there is danger lest a child should *borrow something from its imagination*, or from what it has heard *other people say*, and so amplify facts beyond their just measure. But a child is naturally artless and means to speak the truth. It is not to be forgotten, however, that a child is open to be beguiled, biased, influenced, or intimidated by the false representations or the promises or threats of designing persons."

To this it may be added that the memory of children is very treacherous, and their judgment of time, distance and cause and effect very defective.

Peter Lurges, a boy of twelve or thirteen, testifies in a very credible manner that he saw the accident; that the boy Charles Hubener jumped on the steps of the steam car on the swamp side of the track, and then slipped off and so was hurt. The attempt made to contradict his statements in some particulars was a signal failure. Record, pages 468 to 473.

Hubener, etc., v. The New Orleans and Carrollton Railroad Company et al.

Coleman (page 284) testifies that the boy Hubener stated to him that he got hurt trying to jump on the *steam* car.

Mrs. Bevans, who nursed the boy, says he told her (page 415), "I was on the *steam* car, and the boy pushed me off and the steam car ran over me."

The testimony of Flanagan, a witness residing in the parish of Jefferson, was taken by commission, and then excluded by the judge because another witness had stated casually, on cross-examination at the trial, that he had seen Flanagan in the city that morning. The defendants reserved a bill of exceptions to this ruling, a ruling clearly erroneous. The testimony had been regularly taken. C. P. 425. The witness resided in another parish, and we fail to perceive how the fact that another witness had seen him in the city that morning, could establish the ability of the defendants to produce him in court or cast on them the duty of doing so. His testimony (page 78), which should have been laid before the jury, shows that the boy Hubener was playing about the steam cars about the time they started, "hanging on the steps," and that he told him "to go away from there or he would get hurted."

The statements of the boy Klein, for plaintiffs, are not in necessary conflict with those quoted for the defense.

We gather from the record, as a whole, that the boy may have been pushed from the platform of the horse car, as he says he was, but that this fact had no causative relation to the subsequent injury, any more than if it had happened an hour or a year before; that finding himself left behind, he went across and attempted to amuse himself by jumping on the platform of one of the steam cars, which were moving slowly up on the farther side of the street or neutral ground; that he probably had time to cross the steam track before the train came up, and when he attempted to get on, jumped up from the swamp side. It was at this moment that young Lurges saw him, and a moment after he fell and was injured. "He was jumping on," says this witness, page 201, "with his two knees when he fell." He was not a passenger on this steam train. The company owed him no duty as a common carrier, and no greater duty than they owe to all who walk the streets—the duty of running their trains lawfully and carefully. This train was running very slowly and carefully, and it nowhere appears that by any fault of defendants was the unfortunate child injured. The verdict of the jury is without foundation.

It is therefore ordered that the judgment appealed from be reversed and the verdict set aside. It is further ordered that there be judgment in favor of the defendants herein, with costs in both courts.

Rehearing refused.