## VICKSBURG AND MERIDIAN RAILROAD COMPANY *v.* PHILIP HART.

1. RAILROADS. *Injury to stock. Negligence. Instructions.*

   There must be a causal connection between the negligence and the injury complained of in a suit against a railroad for injury to stock. It is error to instruct the jury that *any* negligence will entitle the plaintiff to recover.

2. SAME. *Brakemen.*

   The fact that the brakemen on the train were not at their posts will not entitle the plaintiff to recover for stock killed, unless it is also shown that their absence contributed to the injury.

APPEAL from the Circuit Court of Hinds County.

HON. T. J. WHARTON, Judge.

The appellee sued the appellants to recover damages for a mule killed by the locomotive and cars of the latter. At the time the mule was killed the train was running on a down-grade around a sharp curve from right to left. The engineer was at his post on the right side of engine, but from his position, owing to the sharpness of the curve, could not see the mule, and did not see it until it was struck. His attention was called to the fact that the mule was on the track by the fireman, who was supplying the engine with fuel, and he immediately whistled for brakes ; but it was too late, and the collision was unavoidable. It was shown that at the time the whistle blew the brakemen were in the caboose and not at their respective posts on the top of the train, but got on top immediately and applied the brakes. S. Jackson, a witness for the plaintiff, testified that the mule ran twenty-five or thirty yards in front of the train, " kicking back at it," before it was struck. The killing occurred within the corporate limits of the city of Jackson, and at the time the train was running at a greater rate of speed than six miles an hour.

The court gave the following instructions for the plaintiff, which were excepted to by the defendant:

(2.) The law presumes that every killing of stock by a railroad company is done carelessly and negligently, and the burden of proof is on the railroad company to show that there was no negligence or carelessness on the part of the company.

(3.) If the jury believe from the evidence that the brakemen on the train that killed the plaintiff's mule were not at their posts, but inside of the cars, and that after the whistle for brakes to be applied had been sounded the brakemen had to climb out of the cars in order to apply the brakes and get to their posts, the jury would be warranted in concluding that there was negligence or carelessness.

(4.) It is the duty of all employees on a railroad train to be at their posts while the trains are in motion, and the brakemen on such trains should be at their posts, so as to be ready to apply the brakes as soon as the signal is given.

*Nugent & McWillie*, for the appellant.

1. The engineer was not in fault. He was going on a down grade and through the sharp curve that approaches the high railway bridge across Pearl River from the west, and, as the testimony shows, could not see down the track at all from the place on his locomotive where the duties of his employment required him to sit. He never saw the mule at all until after it was struck, and did not know that it was on the track until it was seen by the fireman, who happened to look out on the left side of the engine, when he at once did everything in his power to save it. See *M. & O. R. R. Co.* v. *Hudson*, 50 Miss. 574, where the animal got on the track unseen by the engineer and in such wise as to render whistle and brakes unavailing, and the location of the railway track and its surroundings, whereby the engineer was prevented from seeing the animal, being taken into account. *Vide*, also, *Chicago, etc., R. R. Co.* v. *Bradfield*, 63 Ill. 220.

2. According to Si. Jackson, one of plaintiff's witnesses, the mule ran down the track for twenty-five or thirty yards, "*kicking back at the locomotive.*" R. 14. We submit in all seriousness that the failure of the railway company to make provision against such extraordinary and unaccountable conduct on the part of the mule in question cannot be imputed as negligence. If "seen too oft" the mule grew so familiar with as to despise a railway train and voluntarily engaged in a sparring match with its locomotive, it is hard to perceive upon what theory of right the owner can claim damages when it comes out of the contest second best.

3. The third instruction for plaintiff is clearly erroneous in view of the facts of the case. It tells the jury in substance that if the brakemen were not on top of the cars they would be warranted in a conclusion of negligence, and the sixth instruction tells them to find for plaintiff unless defendant had shown there was no negligence. In view of the facts of the case showing that the accident was in nowise attributable to any fault on the part of the brakemen, we submit that this was error. In a case where the use of the brakes could have availed nothing, the jury were told that if the brakemen were not on top of the cars they might find there was

negligence, and they should find for plaintiff if defendant had not disproved negligence—*i. e.*, the absence of brakemen from top of cars.    It is unnecessary, we apprehend, in the light of the authorities before mentioned, to argue the impropriety of this charge.

4. The *fourth* instruction is abstractly correct; but, having no applicability to the facts of the case, ought not to have been granted. Employees should be at their posts; but when the accident was due to no fault of the employees, it is erroneous and misleading to give such a charge to the jury in reference to the brakemen on the train. *McCall* v. *Nave*, 52 Miss. 499; *Hogan* v. *State*, 46 Miss. 274; *Adams* v. *Power*, 48 Miss. 451; *Myrick* v. *Wells*, 52 Miss. 149.

*Shelton & Shelton*, for the appellee.

1. This mule was killed inside the corporate limits of the city of Jackson, and the evidence, we think, pretty conclusively shows that the train was running faster than six miles an hour.

2. The objections to the instructions to the jury on behalf of the plaintiff below are not sound.    According to the *defendant's theory* of the testimony, of course, all the plaintiff's charges are incorrect, and *vice versa*.    But according to the plaintiff's theory of the case his charges are correct.    If the jury had found the defendant's theory of the case to have been the correct one, then under defendant's instructions a verdict would have resulted for defendant; but the jury found differently—consequently a verdict for plaintiff.

3. The objection to the second charge for the plaintiff is hypercritical.    There is no idea in the instruction not in the statute. There is no material difference between the idea conveyed by the charge that the law presumes the killing to have been done carelessly or negligently, until the contrary appears, and the statute which says the killing "shall be *prima facie* evidence of the want of reasonable skill and care."  *  *  *  If the law makes the proof of the killing "*prima facie* evidence of the want of reasonable skill and care," does not a legal presumption arise that there was carelessness or negligence from the fact of the killing?

CAMPBELL, C. J., delivered the opinion of the court.

It was error to instruct the jury for the plaintiff that the ab-

sence of the brakemen from their posts when the whistle sounded was negligence, and that any negligence entitled the plaintiff to recover, without embracing the idea of a causal connection between their negligence and the destruction of the mule. If brakemen were not at their post of duty, but the killing of the mule could not have been avoided if they had been, their absence would not have made any difference as to the result, and should not have affected it. The third and fourth instructions for the plaintiff were wrong for the reason stated. The evidence strongly suggests the insufficiency of an immediate application of brakes to have prevented the catastrophe. The evidence leaves but little doubt that the train was running at a greater speed than six miles an hour within the corporate limits of Jackson when the mule was killed. If so, the recovery was right, notwithstanding the erroneous instructions on another view of the case. There is the usual conflict between the employees of the appellant and other witnesses as to this, but that the train overtook the mule *running* from it is conclusive that the speed of the train was greater than six miles an hour, and sufficient to determine the case in favor of the appellee. We think it improbable that a different result would occur on a new trial, and as the case is before us on appeal from a judgment overruling a motion for a new trial, the

*Judgment is affirmed.*