BERTRAM v. PEOPLES RAILWAY COMPANY, Appellant.

In Banc, March 5, 1900.

154 639
a156 301
154 639
161 15
d161 16
154 639
174 253
154 639
177 628

1. **Instruction: ASSUMPTION OF FACT.** Where the evidence as to a fact in litigation is all one way, it is not reversible error for an instruction to assume such fact to be true. So that where plaintiff in a suit for damages against a railroad for personal injuries, testified that he was 68 years old, and there was no other testimony as to his age, it was not reversible error for his instruction to assume that he was an old man.

2. ———: **COMMENT ON EVIDENCE: AGED AND INFIRM PERSONS.** An instruction that merely tells the jury that, in determining whether defendant's agents in charge of its street cars did or did not stop the same for a reasonable length of time to permit plaintiff to take a seat, they should consider his evident age and physical condition, without any suggestion as to the weight to be given to these facts, is not a comment on the evidence.

3. ———: **SINGLING OUT FACTS.** Nor was such instruction vicious as singling out and giving undue prominence to the fact of plaintiff's age.

4. ——: ——: IMMATERIAL FACTS: PREJUDICE. If the fact to which undue prominence is given in the instruction is immaterial, or if it is apparent that the other party could not have been prejudiced thereby, the judgment should not be reversed because the instruction commented upon the evidence. The Supreme Court will reverse a judgment only when material error has been committed.

5. ——: SEATING ONE'S SELF ON A CAR. Where the evidence is conflicting as to whether plaintiff had sufficient time to have seated himself in a street car before it started forward and injured him, the appellate court will not pass on the question.

6. Verdict: EXCESSIVE: PASSION OR PREJUDICE. Plaintiff was injured in an attempt to board a street car, which was negligently started while he was on the running board, and he was struck by a wagon. He remained in bed for about two months, his hand was bruised and his thumb dislocated, his ribs fractured, he expectorated blood freely for six months and was unable to sleep on one side, and at the time of the trial he was a nervous wreck, unable to work and suffering with pain, but previous to the accident was in good health. *Held*, that, although these facts were alone testified to by him, a verdict for $3,500 was manifestly not the result of passion or prejudice. Nor was it excessive.

PER MARSHALL, J., DISSENTING.

1. Instructions: AGED AND INFIRM PERSONS: DEGREE OF CARE. As plaintiff was in better health at the time of the accident than he had ever been and his physical condition was then very good, there was no proper place in the case for the application of the rule requiring a longer stop of the car for the plaintiff to board than for any other able-bodied man.

2. Contributory Negligence: BOARDING MOVING CAR: INVITATION. As there is no evidence that plaintiff was induced to board a running train upon the invitation of defendant's servants in charge thereof, and as he did not take a seat as soon as a person of ordinary diligence would have done in view of the dangerous proximity of the train to a pile of brick, but loitered on the running board and was struck by the wagon because of its proximity to the train, and not because of any sudden lurch in the starting of the car, he was guilty of such contributory negligence as prevents a recovery.

3. Verdict: EXCESSIVE: RESPONSIVE TO PETITION. As the petition only claimed $5,000 damages, of which $1,200 was for medical services, etc., and $2,000 for loss of earning capacity, and there was no testimony as to either item, his claim should at least be reduced to $1,800.

Bertram v. Peoples Ry. Co.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*Lubke & Muench* and *Julius T. Muench* for appellant.

(1) Instruction numbered 1, given for plaintiff, was erroneous, because: (a) It assumed that plaintiff was an old man. Stone v. Hunt, 94 Mo. 475. (b) It commented on the fact of plaintiff's age, and unduly directed the attention of the jury to that fact by singling it out. Chouquette v. Barada, 28 Mo. 491; Miller v. Marks, 20 Mo. App. 369; Hopper v. Vance, 27 Mo. App. 336; Doud v. Reid, 53 Mo. App. 553; Railroad v. St. L. Union Stock Yds. Co., 120 Mo. 541; Wright v. Richmond, 21 Mo. App. 76; Blair v. Railroad, 31 Mo. App. 224; Benjamin v. Railroad, 50 Mo. App. 602; Kingsland v. Iron Co., 29 Mo. App. 526; Weil v. Schwartz, 21 Mo. App. 375. (2) The verdict for $3,500, rendered by the jury in favor of plaintiff, is excessive in view of all the evidence adduced, and the judgment thereon should therefore be reversed. Benson v. Railroad, 78 Mo. 504; Marshall v. Railroad, 78 Mo. 610; Parsons v. Railroad, 94 Mo. 286; Nicholson v. Couch, 72 Mo. 209; Schmitz v. Railroad, 46 Mo. App. 380; Tucker v. Railroad, 66 Mo. App. 141. (3) The judgment in the case at bar can not stand, because where the verdict is as high as in this case, compared to the weight of the evidence, the law requires the instructions to be absolutely unexceptionable. Carroll v. Paul's Adm'r, 16 Mo. 226.

*C. L. Mott* for respondent.

(1) Instruction numbered 1, given on behalf of the plaintiff, was proper: (a) Because the defendant owed the plaintiff the duty to stop its train for such a reasonable length

of time as would permit him to take his seat or reach a place of safety. Dougherty v. Railroad, 81 Mo. 325; Ridenhour v. K. C. Cable Co., 102 Mo. 270; Hanks v. Railroad, 60 Mo. App. 274; Weber v. Railroad, 100 Mo. 194; Shearman & Redfield on Neg. (5 Ed.), sec. 508. (b) Because where the passenger is evidently aged, infirm or very young, the duty of the carrier toward him must be performed with due regard to such apparent condition. · Ridenhour v. K. C. Cable Co., *supra*; Hanks v. Railroad, *supra*; Shearman & Redfield on Neg. (5 Ed.), secs. 508, 510; Hutchinson on Carriers, sec. 669. (2) The assumption of a fact in an instruction of which there is some proof and no countervailing evidence is not reversible error. Dickson v. Railroad, 104 Mo. 491. A *fortiori* is this true where the evidence of such assumed fact comes from the complaining party. Harrison v. White, 56 Mo. App. 175. (3) The verdict of $3,500 is not excessive. Hanlon v. Railroad, 104 Mo. 381; Britton v. St. Louis, 120 Mo. 437; Mellor v. Railroad, 105 Mo. 455; Hall v. St. Joseph Water Co., 48 Mo. App. 356; Buc v. People's Ry. Co., 108 Mo. 179; Foster v. Railroad, 115 Mo. 165; Gorhom v. Railroad, 118 Mo. 408; Burdoin v. Trenton, 116 Mo. 358. (4) Even though the award of damages may appear to be large, the finding of a jury will not be disturbed except in severe cases, and only where the verdict indicates misconduct, undue feeling or prejudice on the part of the jury. Williams v. Railroad, 123 Mo. 573; Sawyer v. Railroad, 37 Mo. 240; Hanlon v. Railroad, 104 Mo. 381.

BURGESS, J.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff while a passenger on one of defendant company's cars, in the city of St. Louis, on June 29, 1893, by reason of the negligence of the employees in charge of the car.

The petition alleges that immediately after plaintiff had stepped upon said step (referring to the running board of the

grip car), and before he had time and opportunity to take a seat in said grip car, as aforesaid, defendant's agents and servants operating said train, without notice or warning to plaintiff, and while he was turning to take a seat in said car, carelessly, negligently and violently started said train with a sudden and violent lurch, thereby throwing plaintiff's body out somewhat from said car, and thereby causing it to come into violent contact with a wagon standing close up to defendant's said track along which said train was being operated, and on the west side of said Fourth street, and south of the south line of said Pine street.

"Plaintiff further states that his face was turned from said wagon, and that he did not and could not see it. That said wagon was in full and plain view of defendant's agents and servants in charge of said train, and that they saw said wagon, or by the exercise of reasonable care and diligence might have seen it before they started said train, as aforesaid. That plaintiff when he stepped upon the step of said grip car, as aforesaid, was in full and plain view of defendant's agents and servants in charge of said train, and that they saw and knew, or by the exercise of ordinary care and diligence could have seen and known that plaintiff had not, and could not have seated himself in said grip car, when they started the said train as aforesaid; and that defendant's agents and servants in charge of said train knew, or by the exercise of reasonable care and diligence, could have known that their careless, negligent and wrongful act in starting said train as aforesaid, while plaintiff was standing on said step, and before he had had an opportunity to seat himself, would bring his body in contact with said wagon."

The defenses were a general denial and contributory negligence.

Plaintiff was a witness in his own behalf, and testified that he would be sixty-eight years old in 1897; that on the morning of June 29, 1893, he started out from his home in

North St. Louis to visit his daughter, who lived near Lafay-ette Park; that after taking a car down town he went to the southwest corner of Fourth and Pine streets to take a south bound car of defendant company, which was to take him out to where his daughter lived; that defendant operated two tracks on Fourth street, south-bound cars running along the west track, and north-bound cars along the east track; that the new Planters Hotel had just been erected on the south-west corner of Fourth and Pine streets and was not yet finished, and that there was a stack of bricks on Fourth street, in front of the hotel, extending from the curb close up to the west rail of the west track of defendant and north to within a few feet of the crossing, and being about twenty feet high and from fifteen to twenty feet long.

Witness further testified that when he had barely gotten to the corner above mentioned one of defendant's trains, consisting of a grip car and trailer, came along, going in a southerly direction, and that he signalled it to stop; that the train stopped, with the rear end of the front (or grip) car opposite to where witness was standing; that the gripman was at the time at his post, in the middle of the grip-car, and that the conductor was on the east side of the front platform of the trailer, about seven or eight feet from witness; that witness then got upon the rear end of the running board, the board running along the side of the grip car, and caught hold of the upright opposite the last seat, which was occupied by a man whom he afterwards learned to be Mr. H. M. Pollard; that immediately after doing this and while he was catching hold of the upright, in front of Mr. Pollard, with his right hand, with a view of getting into the last seat but one, the cars started up violently and with a jerk, and witness, hav-ing let go his hold of the upright opposite the last seat and being in the act of stepping into the last seat but one, was struck on the hand by the rear end of a wagon which was standing near defendant's track, south of, and concealed by

the stack of bricks above referred to, and thrown "all in a
heap up against the back of the seat that (he) was getting
into," and against Mr. Pollard; that he was unconscious for a
few moments thereafter; that the last thing he remembered
before being struck was the conductor's pulling the bell-rope
to signal the gripman to start; that the next thing he knew he
was about to be carried into a drug store; that he "begged to be
left in the position he was in," as he "could not be touched."
That he did not remember any one else's getting on the train
on the corner at which he boarded it. That witness, remaining
on the grip car at his own request, rode out as far as Castleman
avenue, a distance of three or four miles from Fourth and Pine
streets; that he got off there and sat down "in the gutter"
until the same cars came back from the terminus of the road;
that he does not remember whether any other cars passed him
in the meantime; that the train he went out on stopped when
it got opposite him, going back, and that he boarded it and rode
back to the corner of Fourth and Pine streets; and that he was
assisted onto the car he came from North St. Louis on and
rode back to his home, arriving there about two o'clock p. m.;
that the accident had occurred at ten o'clock in the morning.

That he was put to bed when he got home, and that in the
evening Dr. Lutz was telephoned for, but that Dr. Lutz
did not call on him until 2 o'clock p. m. on the day after
the accident; that Dr. Lutz had been recommended to him
by the conductor of the cars on which the accident happened,
because he was defendant company's physician, and would
therefore be cheaper; that witness remained in bed about two
months as a result of the injuries received, and that Dr. Lutz
attended him for the first two weeks of that time; calling on
him once a day during the first week; that Dr. Lutz found
some of witness's ribs fractured, and bandaged him, and that
witness expectorated blood, "more or less," for about six weeks
after the accident; that witness consulted three other phy-
sicians after Dr. Lutz had ceased calling, making two visits

to one of them, Dr. Garlock; that during the time of his illness witness's wife nursed him.   That before the accident he was in better health than he had been in his life, and that his physical condition was very good.   That since the time of the accident his whole nervous system was wrecked from the shock and injury inflicted upon him by defendant.   That for six months after the accident he had such excruciating pains in his right side, that he could not lie on that side at all, and that at the time of trial, two and one-half years after the accident, he had pains on both sides, mostly on the left side, indicating the region of the short ribs, and had been and was wholly unable to do anything at all.

Witness further testified that he found a legal card of Mr. H. M. Pollard in his pocket when he reached home, and that he went to see that gentleman as soon as he was able to go out, and directed him to write to defendant company as his (witness's) attorney.   In answer to a question as to his occupation, witness then testified that he sold buggy stock at the corner of Fourth street and Chouteau avenue before the accident, and explained that by buggy stock he meant "buggies, carriages, phaetons and all such things as that," and on a question by the court he added to this "horses, harness and whips."   On objection of defendant, witness was not allowed to testify as to the net income from this business, as he had alleged in his petition that he had been engaged in the business of buying and selling "horses and mules," and plaintiff thereupon asked leave to amend his petition in that particular, but, on the objection of defendant, withdrew the application. Witness was not able to state what his profits from dealing in horses prior to the time of the accident had been; he had previously testified that he had had no occupation since the time of the accident.   As to his physical condition, witness said that he had been in good health before, but was "just like a complete wreck, not able to do anything," and had pains in his left side after the accident.

Mr. H. M. Pollard, testified that he is an attorney-at-law; that he was on the grip-car of defendant company on which plaintiff was injured at the time such injury occurred, and that he occupied the last seat or the last seat but one on the west side of the car; that he saw plaintiff board the car at the corner of Fourth and Pine on the day mentioned; that he did not remember whether the car came to a full stop, but that he believed it did not; that plaintiff got on the running board, right against and a little to the rear of where witness was sitting, and before he had had time to take his seat, the car started up suddenly and he was struck by a wagon and "thrown back right against" witness, witness reaching out his arm and keeping him from falling; that the wagon which struck plaintiff was the first of two or three brick wagons which were standing just south of a large pile of bricks which extended so close to the tracks as to leave barely room enough for cars to pass; that the length of the brick pile was probably the length of the car; that plaintiff got on the car very close to the brick pile, and that there was no wagon north of the brick pile, between it and the crossing; that the car stopped instantly after plaintiff was struck, and that the conductor immediately came to plaintiff's side; that witness left the car at Fourteenth and Chouteau avenue, and that he does not remember, but he may have put his card in plaintiff's pocket; that he wrote one or two letters to defendant's manager, Mr. Mahoney, at the request of plaintiff and as his attorney, a short time after the accident, but that when he found the matter could not be amicably settled, he advised plaintiff to employ Mr. Mott as counsel, because he knew that he (witness) would have to testify for plaintiff; that witness and Mr. Mott had been partners at one time, and that they still had offices next to each other; that witness believed plaintiff had sent his wife or a note by some one down to his (witness's) office, requesting him to write to defendant company before plaintiff himself came to see him.

John Mahoney, a witness for plaintiff, testified that he was the superintendent of defendant company in June, 1893, and still occupied that position at the time of the trial; that he had been with the company from 1876 to 1886, and from 1890 to 1896, sixteen years in all; that his duties were to oversee the road generally, since it had been changed to a cable road in 1890; that he had been with the Citizens Railway Company in the same capacity for two years prior to 1890, and had had a great deal of experience in the handling of cable cars. Witness then testified that there is an incline from the center of Fourth and Pine streets to the center of Fourth and Chestnut streets, just one block south, the latter point being about four feet higher than the former; that a car is bound to start gradually on an up-grade, the tendency of the car being to roll backwards as soon as the brake is released, and it taking twice the time to get a firm hold on the grip that it would take on a down-grade; that a jerk would only be experienced on a down-grade, where the car would acquire a momentum of its own as soon as the brake was released and would respond almost immediately to the action of the grip on the rope; that it would take longer to get a firm hold on an up-grade, as several feet of cable would pass through the dies of the grip before this could be accomplished, and that, therefore, the steeper the up-grade, the slower and more gradual would be the start; that the car would never start as fast as the rope; that the cable rope wore out in course of time from the friction of the dies.

It was hereupon admitted by defendant that it was a corporation engaged in the business of carrying passengers for hire in the city of St. Louis along Fourth street, and that the point in question was a part of its track at that time. Plaintiff then rested.

John I. Moore, a witness for defendant, testified that he lived at 3825 Garfield avenue and that he was in business for himself as a huckster; that he had been a conductor in de-

fendant's employ for about seven years prior to April, 1896, and that he was the conductor in charge of the train on which plaintiff was injured on June 29, 1893; that the accident in which plaintiff was injured occurred about 9:20 o'clock in the morning of that day; that he remembers plaintiff's face; that witness was standing about the middle of the running-board on the west side of the trailer, which was an open car; that he first noticed plaintiff standing on the sidewalk at the southwest corner of Fourth and Pine streets, signaling for the cars to stop; that the cars stopped and plaintiff stepped on the running-board and from there onto the platform of the grip car, standing in the space between the last seat on the west side, occupied by Mr. Pollard and the dash-board, and leaning against the dash-board with his face to the south; that plaintiff was in that position when the car started up again; that two lady passengers came over from the northwest corner of Fourth and Pine streets and got on the trailer which was on the south crossing, and a boy with a basket ran over from the east side of Fourth street and also got on the trailer, while the cars were stopping; that as soon as these passengers were all aboard the car started up again; that the car started "nice and smooth;" that plaintiff remained in his position against the dash-board until the brick pile and a brick wagon just south of it had been passed, and that plaintiff then stepped down onto the running board, holding onto a standard with his left hand, and was struck by a second brick wagon standing about eighteen feet south of the first, and thrown down onto the running board; that witness ran to him immediately while the gripman had stopped the car, and Mr. Pollard had helped plaintiff up; that the car had gone about thirty-five or forty feet from where plaintiff got on when he was struck, and about four feet after he started to get onto the running board; and that the car was stopped about two or three feet from where the accident occurred; that plaintiff had been on the rear end of the car about fifteen

seconds before trying to get down; that plaintiff asked to be left on the car because he was suffering too much, and that he was placed on the rear seat of the grip, Mr. Pollard changing from that to the one in front of it; that Mr. Pollard rode as far as Fourteenth and Chouteau, and before getting off the car put his card in plaintiff's pocket; that plaintiff rode as far as Castleman avenue, about four miles out; and that witness could see him walking west on Castleman avenue for at least half a block; that the cars then went to the end of the line, about three-fourths of a mile further, waited there about four minutes, and then came back; that when they got back to Castleman avenue, plaintiff was there, waiting and made a motion for the cars to stop; that they stopped and took him on and brought him back to Fourth and Pine streets, where he got off and "walked up the street;" that about three cars must have passed plaintiff on Castleman avenue before witness's cars came back; that witness tried but could not obtain the names of the ladies who got on at the same time plaintiff did; that the cable on that day was running at a speed of about eight miles an hour, and that it usually took about twelve feet to acquire full speed.

Dominick Carr, a witness for defendant, testified that he was in business for himself as huckster in the city of East St. Louis, Illinois; that he had been in the employ of defendant company for eight years prior to and up to April 1, 1896, two years as driver and the last six years as gripman, and that he was in charge of defendant's grip car on which plaintiff was injured on June 29, 1893; that he saw plaintiff on that day standing on the southwest corner of Fourth and Pine streets, signaling to the cars to stop; that two ladies had signaled witness as he was passing the northwest corner, and that they came across Pine street after he stopped; that plaintiff walked toward the grip-car and boarded it; that witness, noticing a wagon close to the track ahead, looked back to the conductor, after getting the first signal, for the signal that everything

was all right, and as he looked back noticed plaintiff "standing on the hind end of the grip car with his back towards the dashboard;" that the conductor gave him the signal to go ahead from the running board on the side of the trailer; that he thereupon started slowly; that when he got the second signal he was about seven feet north of the brick pile hereinbefore mentioned, and that when he had passed the brick pile and a wagon standing just south of it—a distance of about thirteen or fourteen feet from the stopping place—he heard a shout and immediately stopped the train; that, upon looking around, he found plaintiff leaning back on the running board of the grip car, supported by Mr. Pollard and the conductor, and that he then saw plaintiff placed in a seat, and on reaching Market street heard him beg to be left on the car; that plaintiff rode out to Castleman avenue on the car and got off there; and that he saw plaintiff walk west on that street; that they then went to the end of the road and came back to Castleman avenue about ten minutes after, and that he saw plaintiff there signalling to get on; that they took him on board and that he rode back down town with them; but that witness did not know where he got off.

At the close of plaintiff's evidence, and again at the close of all the evidence, defendant interposed a demurrer to the evidence which was refused, and it duly excepted.

The court then instructed the jury in behalf of plaintiff, and over the objection and exception of defendant, as follows:

1.   The court instructs the jury that in determining whether defendant's agent or agents in charge of its said train did or did not stop same for a reasonable length of time to permit plaintiff to take a seat upon the grip car, as mentioned in the other instructions given by the court, you should consider the evident age and physical condition of plaintiff, as apparent to defendant's agent or agents in charge of said train at the time plaintiff boarded said grip car.

2.    The court instructs the jury that, although when the occurrence in question happened, the plaintiff had not paid his fare, yet if the jury believe that he went on the car as a passenger, and with the intention of paying his fare when called on by defendant's conductor in charge of said train to do so, then you are instructed that plaintiff was a passenger, and defendant owed him the same duties as if in fact he had paid his fare at said time.

3.    The court instructs you that if you believe from the evidence that on the 29th of June, 1893, defendant was operating a system of railway tracks along Fourth street, in the city of St. Louis, and that it started a train of cars in a southerly direction along and on said tracks; and if you believe from the evidence that plaintiff, intending to become a passenger on said train, was standing on the southern line of Pine street at its intersection with said Fourth street, and that he signalled defendant's agent or agents in charge of said train to stop the same on its tracks at the southern line of said intersection of said streets; and if you believe from the evidence that said agent or agents in response to such signal did stop said train (or slacked its speed to a slow rate, at said point, as if it was going to be stopped) for the purpose of permitting plaintiff to get on the same, and if you believe from the evidence that plaintiff was then and there exercising the same care as is customarily exercised by persons of ordinary prudence under like circumstances, and that he stepped upon the running board of the grip car of said train, for the purpose of taking a seat in said car; and that the agent or agents in charge of said train knew, or by the exercise of reasonable care might have known, that plaintiff was then and there standing upon said running board (if you believe from the evidence such to be the fact), but that nevertheless, said agent or agents suddenly and violently started the car forward and brought plaintiff's body in contact with a wagon standing alongside of said track, and injured plaintiff, you will

find for plaintiff, and assess his damages as specified in the other instructions given by the court.

4. If under the other instructions, you decide to find for plaintiff, you will assess his damages at such sum as you believe from the evidence will be a reasonable compensation to him for the bodily and mental pain or suffering he has sustained in consequence of said injuries, as well as for any such permanent disability to labor as you may find from the evidence he has suffered by reason thereof. If, under the other instructions, you decide to find for defendant your verdict need merely state that you find for defendant on the issues joined.

At the request of defendant the court instructed the jury as follows:

1st. Or if, from the evidence, the jury believe that plaintiff had fully boarded the car, and while said car was in motion, he stepped down again upon the running board of the car, and you also believe from the evidence that, with the car still in motion, the plaintiff then attempted to walk along upon said running board and thereby brought his body in contact with the wagon, then your verdict should be for defendant company.

2d. And if, from the evidence, the jury also believe that plaintiff just before or at the time when he was getting on the car, saw, or by the exercise of ordinary care, could have seen the wagon, and by the exercise of the same degree of care on his part could have so placed himself on the car or the running board thereof that his body would not have come in contact with said wagon, then your verdict should be for defendant company.

3d. The court also instructs the jury that it was the duty of plaintiff to exercise ordinary care for his safety, and if, from the evidence, the jury believe that plaintiff, on getting aboard of defendant's car, by exercising the care aforesaid, could have placed himself in a safe position on the car,

but failed to do so, and thereby contributed directly to his being injured, then your verdict should be in favor of defendant company.

The jury returned a verdict in favor of plaintiff, assessing his damages at three thousand five hundred dollars, for which judgment was rendered. After unsuccessful motion for a new trial defendant appeals.

There are but two questions presented for review by this appeal and they are with respect to the correctness of the first instruction given on behalf of plaintiff, and the excessiveness of the verdict.

It is insisted that the instruction was erroneous because it assumed that plaintiff was an old man at the time of the accident. Where the evidence is conflicting as to any material fact in litigation, an instruction which assumes the existence of such fact is erroneous, but where there is an assumption of a fact in an instruction, as proved, when the evidence is all one way as to such fact it is not reversible error for the instruction to assume it. [First Nat. Bank v. Hatch, 98 Mo. 376; Walker v. City of Kansas, 99 Mo. 647; State v. Moore, 101 Mo. 316.]

The accident happened on June 29, 1893, and plaintiff testified that he would be sixty-eight years old in 1897. There was no other verbal testimony in respect to his age. It was not a controverted fact, and even if the instruction can be construed as assuming that he was an old man at the time of the accident, which was manifestly so, it was not reversible error.

This instruction is also criticised upon the ground that it commented on the fact of plaintiff's age, and unduly directed the attention of the jury to that fact by singling it out. The instruction was not, we think, a comment on the evidence, as it merely told the jury that in determining whether defendant's agents in charge of its train did or did not stop the same for a reasonable length of time to permit plaintiff to take a

seat upon the grip car, they should consider his evident age and physical condition, without any suggestion or intimation as to the weight to be given to these facts, or what importance should be attached to them, and was not objectionable upon these grounds.

The question then is, was the instruction vicious upon the ground that it improperly directed the attention of the jury to the fact of plaintiff's advanced age. An instruction which singles out and gives undue prominence to isolated parts of the evidence is not permissible, and should not be given. [Chouquette v. Barada, 28 Mo. 491; St. L. K. & N. W. R'y Co. v. St. L. Union Stock Yards, 120 Mo. 541.] This however is not an arbitrary rule, but like almost all other rules, there are exceptions to it. For instance, if the fact to which attention is unduly called, is immaterial to the issues involved, the judgment should not be reversed because of that fact. Or if it appears that the party complaining of the instruction could not have been prejudiced thereby the judgment should not be reversed. Plaintiff's age was not a fact upon which the case turned, or that could have affected the result, whatever his age may have been and we are unable to see how defendant's rights were in any way prejudiced by the instruction. By section 2303, Revised Statutes 1889, this court is prohibited from reversing the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error and materially affecting the merits of the action.

Counsel for defendant in their brief say that under the physical conditions obtaining at the time the injuries complained of were received, plaintiff had ample time to seat himself before the cars reached the wagon by which he was struck; at the same time they admit that the testimony as to the cause of the injuries of which plaintiff complains, was exceedingly conflicting. This question was one of the issues presented by the instructions to which no objections are made,

save and except plaintiff's first, and the jury found against defendant's contention.

Nor is it claimed that the verdict was not authorized by the evidence, except as to the amount, which defendant insists was excessive, and manifestly the result of prejudice on the part of the jury, and greatly in excess of any sum which the evidence justified, and that the judgment ought to be reversed upon that ground. That this court will reverse the judgment of a trial court based upon the verdict of a jury which is manifestly the result of prejudice, or passion, there can be no doubt, but there is nothing in this record to sustain this assertion. Clearly the amount of the verdict itself, under the circumstances attending the injury, and its consequent results would not justify such an imputation upon the jury.

The only question remaining is with respect to the amount of damages allowed by the jury, whether or not excessive, and if so if to such an extent as to justify a reversal upon that ground. Plaintiff was the only witness who testified as to the nature and extent of his injuries, pain and suffering, and, according to his testimony which was not contradicted, he remained in bed continuously for about two months afterwards; that his hand was bruised and his thumb dislocated; that his ribs were fractured; that he expectorated blood quite freely at first for about six weeks, and that for six months after the accident he was unable to sleep on his right side because of the pain it gave him to do so; that at the time of the trial, two and one-half years after the accident, he was a nervous wreck, unable to do work of any kind, and that he then was suffering with pains on both sides; that his skin on his right side was mottled in appearance, and that previous to the time of the accident he was in good health for a man of his age, and was suffering no infirmity.

While plaintiff's injuries were serious the damages assessed seem large, but the judge who tried the case gave the verdict his sanction, and, under such circumstances, the verdict is not

so excessive as to justify us in reversing the judgment upon that ground alone.

We therefore affirm the judgment. *Gantt, C. J., Brace* and *Valliant, JJ.,* concur; *Sherwood, Marshall* and *Robinson, JJ.,* dissent.

MARSHALL, J. (*Dissenting.*)—I dissent from the majority opinion in this case for the following reasons:

### I.

The refusal of the court to sustain the demurrer to the evidence is the first question presented by this record.

The petition is bottomed upon the averment that the train was *slowed up, coming nearly to a stop* when "*upon the invitation of defendant's agents and servants in charge of said train,*" the plaintiff stepped upon the running board of the grip car, and before he had time to take a seat the car was started with a violent lurch, so that it threw plaintiff's body outwards and brought it into violent contact with a wagon, which was standing near the track, and which the defendant's agents saw or could have seen by the exercise of reasonable care, but which the plaintiff did not see because his back was turned towards it, whereby he was injured.

The plaintiff's own testimony is, "that the new Planter's Hotel had just been erected at the southwest corner of Fourth and Pine streets, and was not yet finished, and that there was a stack of bricks, on Fourth street, in front of the hotel, extending from the curb close up to the west rail of the west track of defendant and north to within a few feet of the crossing, and being about twenty feet high and from fifteen to twenty feet long; that when he had barely gotten to the corner above mentioned one of defendant's trains, consisting of a grip car and a trailer, came along, going in a southerly direction, and that he signalled it to stop; *that the train stopped,* with the rear end of the front (or grip) car opposite to where witness

was standing; that the gripman was at the time at his post, in the middle of the grip car and that the conductor was on the east side of the front platform of the trailer, about seven or eight feet from witness; that witness then got upon the rear end of the running-board along the side of the grip car, and caught hold of the upright opposite the last seat, which was occupied by a man whom he afterwards learned to be Mr. H. M. Pollard; that immediately after doing this, and while he was catching hold of the upright, in front of Mr. Pollard, with his right hand, with a view to getting into the last seat but one, the cars started up violently and with a jerk, and witness *having let go his hold of the upright opposite the last seat* and being in the act of stepping into the last seat but one, was struck on the hand by the rear end of a wagon which was standing near defendant's track, south of, *and concealed by the stack of bricks above referred to*, and thrown 'all in a heap against the back of the seat that he was getting into' and against Mr. Pollard."

The testimony of H. M. Pollard, the only other witness as to the accident for plaintiff, was, "that he was on the grip car of defendant company on which plaintiff was injured at the time such injury occurred, and that he occupied the last seat or the last seat but one on the west side of the car; that he saw plaintiff board the car at the corner of Fourth and Pine on the day mentioned; *that he did not remember whether the car came to a full stop, but that he believed it did not:* that plaintiff got on the running board, right against and a little to the rear of where witness was sitting, and before he had had time to take his seat, the car started up suddenly and he was struck by a wagon and "thrown right back against" witness, witness reaching out his arm and keeping him from falling; that the wagon which struck plaintiff was the first of two or three brick wagons which were standing just south of a *large pile of bricks which extended so close to the track as to leave barely room enough for cars to pass; that the*

*length of the brick pile was probably the length of the car;
that plaintiff got on the car very close to the brick pile, and
that there was no wagon north of the brick pile, between it
and the crossing."*

With the exception of the testimony of the defendant's
foreman, who was called as a witness for plaintiff, and who
testified that from 4th and Pine to 4th and Chestnut (one
block's distance) it was up grade, about four feet to the block,
and that cable cars can not be started with a jerk on an up
grade, as the rope will slip through the dies several feet before
a firm grip or hold can be taken on the rope on an up-grade,
this was the whole of the plaintiff's testimony.

Whether we take the plaintiff's version, that the car
*stopped*, or that of his witness, Pollard, that he did not remem-
ber whether the car came to a full stop, but believed it did
not, the fact remains that the negligence charged in the peti-
tion, that the car was slowed up, coming nearly to a stop,
when "upon the invitation of defendant's agents and servants
in charge of said train," the plaintiff stepped on the running
board, the car was started with a violent lurch before he could
take a seat and the plaintiff was thrown outwards against a
wagon which was standing near the track and which defend-
ant's servants saw or might have seen by the exercise of ordi-
nary care, but which the plaintiff did not see because his
back was turned," is not established by the evidence in this
case.

There is no evidence that the plaintiff was induced to
board a running train, "upon the invitation of defendant's
agents and servants in charge of the train," as alleged in the
petition, and which averment, as we shall directly show, was
necessary to state a cause of action.   On the contrary the
evidence clearly shows that plaintiff boarded the train while it
was at a stop, as he testifies, or while it was slowed up, coming
nearly to a stop, as he alleges in his petition, of his own free
will and without invitation from or consultation with any per-
son whomsoever.

There is no evidence that the defendant's servants saw or by the exercise of reasonable care could have seen the wagon, but that plaintiff could not do so because his back was turned, as the petition charges. On the contrary the plaintiff himself testified that he "was struck on the head by the rear end of the wagon which was standing near defendant's track south of, *and concealed by the stack of bricks*," which he said was twenty feet high, and Pollard testified "that the wagon which struck plaintiff was the first of two or three brick wagons which were standing just south of a large pile of bricks which extended so close to the track as to leave barely room enough for cars to pass." There is therefore no testimony that the defendant's agents could have seen the wagon any better than the plaintiff could have done.

But the gist of the matter lies just here. The plaintiff got on the rear end of the grip car at a point just north of the pile of bricks. The pile of bricks was, according to plaintiff, fifteen feet long, and according to Pollard the length of the grip car. The wagon was south of the pile of bricks and *concealed* by the pile of bricks which came so close to the track as to leave barely room for the cars to pass. Plaintiff says he had let go his hold of the upright in front of the rear seat, with a view to getting into the last seat but one when the car started up violently and with a jerk and his hand was struck by the rear of the wagon. If as plaintiff testified the car had stopped when he got on it, then the sudden start or jerk must have propelled the car forward at least fifteen feet (as the plaintiff states the distance) or the length of the car (as Pollard states the distance) before he could have struck the wagon, for he got on the car at the north end of the pile of bricks and the wagon was concealed behind the south end of the pile of bricks, and the plaintiff says the pile was fifteen feet long and Pollard says it was the length of the car. This, too, on an up-grade of four feet to the block, when, according to the undisputed evidence of the plaintiff's witness, Mahoney,

it is impossible to start a train with a jerk on an up-grade, as the rope will slip several feet through the dies, before they can get a firm hold on it.

The same condition is presented if the allegation of the petition that the car was slowed up, coming nearly to a stop or Pollard's testimony that he did not believe the car had come to a full stop is taken as correct.

There are some physical facts, some laws of physics, which enter into the consideration of such cases as this, and we can not bring ourselves to believe that a grip-car, with a trailer attached, on a cable road, can be started, from a full stop or nearly so, by the strength of one man, applied to the lever which attaches the grip car to the rope, so suddenly or violently as to propel the train forward fifteen feet or the length of the grip car, on an up-grade of four feet to the block, before a man standing on the running-board can take his seat on the car.

It seems too plain to admit of argument that the plaintiff did not take a seat as promptly as he could have done or as he should have done in view of the dangerous proximity to the pile of bricks, but that he loitered on the running-board and was struck by the wagon because of its proximity to the track and not because of any sudden lurch in starting the car, and hence that the plaintiff did not exercise that degree of care which a person of ordinary diligence would have exercised under the same circumstances, and therefore he was guilty of contributory negligence, which cuts off his right of recovery. Especially is this true in view of the plaintiff's testimony that at the time of the alleged lurch he had let go of the upright opposite the last seat on the grip-car while standing on the running-board with a view to getting into the last seat but one.

This conclusion is, of course, reached without regard to the testimony of defendant's witnesses, that the car stopped and two ladies and a boy got on the east side of the grip-car,

while plaintiff got on the west side of it and at first stood on the rear platform and after the car started he stepped down on the running-board to go forward to get a seat, which, however, may possibly be the true solution of the accident, but which we do not here so decide.

A street railroad, like a steam railroad, "must allow reasonable time for passengers to enter and leave its car with safety, in the exercise of ordinary care. It should allow the passengers reasonable time to enter and take a seat, if there be one, or reasonable time to seize the straps furnished for passengers when standing; and while it may start its car before the passenger has had time to take a seat, or secure his hold on the strap, it must exercise the utmost care in starting so as not to jar or upset him." .[Dougherty v. Missouri Railroad Co., 81 Mo. l. c. 330.]

But no person has a right to board a moving train and hold the carrier for damages received in so doing, unless invited so to do by the carrier or his servants in charge of the train.

Hutchinson on Carriers (2 Ed.), sec. 641, says: "Thus nothing is more universally agreed upon, perhaps, than that the attempt to get upon a railway train whilst in motion, without a necessity for doing so induced by the conduct of the employees of the railway company, and without an invitation to do so from its agent acting in the line of his duty, is presumptively and generally, a negligent act *per se,* and precludes the passenger from the right to recover for the injury which may be thereby occasioned. Many cases have occurred in which passengers have received injuries in such reckless attempts, and it has been invariably held that, in the absence of circumstances to excuse such reckless conduct, the injured party is remediless. Nor will the refusal to stop the train, nor the custom of those in charge of the train to slacken its speed at the particular station, in order to take on passengers without coming to a stop, excuse the negligence of

the party. If the train would not halt to receive the passenger, when by law or its published schedules it was obligatory upon the company to do so, the party would have his remedy by an action for the damage or loss sustained; and if it had adopted a practice of receiving its passengers while in motion, it would be reckless conduct on the part of the company, or of those in charge of its trains, which would not justify or excuse the equally reckless imprudence of the injured party." The author cites in support of the text the following cases: Phillips v. Railroad, 49 N. Y. 177; Harvey v. Railroad, 116 Mass. 269; Owen v. Railroad, 2 Bosw. 374; Ginnon v. Railroad, 3 Rob. (N. Y.) 25; Mettlestadt v. Railroad, 4 Rob. (N. Y.) 377; Ohio, etc., Railroad v. Stratton, 78 Ill. 88; Ill. Central R. R. Co. v. Chambers, 71 Ills. 519; Ills. Cen. R. R. Co. v. Slatton, 54 Ill. 133; Johnson v. Railroad, 70 Pa. St. 357; Knight v. Railroad, 23 La. Ann. 462; Hubener v. Railroad, 23 La. Ann. 492; Lewis v. Railroad, 38 Md. 588; Texas, etc., Ry. Co. v. Murphy, 46 Tex. 356; Mich. Cent. R. R. Co. v. Coleman, 28 Mich. 440; Timmons v. Railroad, 6 Ohio St. 105; Reddington v. Traction Co., 132 Pa. St. 154; Denver, etc., R. R. Co. v. Pickard, 8 Colo. 163; Swigert v. Railroad, 75 Mo. 475; Missouri Pacific Ry. Co. v. Railroad Co., 36 Fed. Rep. 879; s. c., 34 Fed. Rep. 92; Bacon v. Railroad, 21 Atl. Rep. 1002.

Most of these were cases of steam railroads, but there is no difference in principle between steam railroads and cable or electric street railroads that run at from seven to fifteen or twenty miles an hour, so far as the danger of boarding them while in motion is concerned.

The case of Reddington v. Traction Co., 132 Pa. St. 154, was a street railway case, and it was developed on the trial from the plaintiff's testimony, that "he hailed an open summer car of defendant company......; that the driver applied the brake and checked the speed of the car; that the plaintiff, having his coat and dinner bucket on his arm, stepped upon

the step just behind the front dasher, seizing the rail of the dasher with his right hand, the car still in motion; that just as he got into this position, the driver threw off the brakes, when a jolt or sudden upward movement of the car occurred, the plaintiff's foot slipped from the step, and he was thrown by the movement under the wheel of the car, receiving severe injuries." The lower court nonsuited the plaintiff, who then appealed to the Supreme Court, where the following terse opinion was delivered: "Per Curiam: The learned judge below was justified in directing a nonsuit in this case, for the reason that, according to the plaintiff's own statement of the cause of the accident, he was not entitled to recover. It occurred as he was attempting to get on one of the defendant's cars while it was still in motion. His left arm was encumbered with his coat and dinner bucket when he placed his foot on the step. The motion of the car caused his foot to slip, and, having only his right hand free, he was unable to hold on, and fell off and was injured. The only alleged negligence on the part of the driver was in loosening the brake when the plaintiff stepped on the car. It may be a jury would have found this to be negligence, and that the plaintiff was not guilty of contributory negligence; but it would have been little short of a burlesque upon the administration of the law. The facts being undisputed, the learned judge below did not need the aid of a jury in determining their legal effect. Judgment affirmed."

Eliminate the coat and dinner bucket on the left arm and substitute the fact that the plaintiff had let go his hold on the upright opposite the rear seat with a view to taking the end seat but one and this opinion might well have been written for this case.

Hutchinson on Carriers, in section 642, points out, however, some excuses for attempting to board a moving train, as for example, where the train fails to wait long enough for the passenger to get aboard, thereby placing him in the dilemma

of being left behind or of getting on while the train is in motion, and when there is no apparent danger in attempting to get aboard; or where a passenger has tickets entitling him to passage over two roads, running in connection with each other, and upon arrival at the terminus of the first road the train on the second, upon which he was to pursue his journey, moved off without giving him time to cross the platform in order to reach it. The author, however adds: "But, to rebut the presumption of negligence and justify a recovery, it is said in a late case" (Solomon v. Railroad, 103 N. Y. 437) "it must appear that the passenger was, by the act of the carrier, put to an election between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created which interferred, to some extent, with his free agency and was calculated to divert his attention from the danger and create a confidence that the attempt could be made in safety."

In Texas it is held that even where the conductor tells the passenger to "jump on" it is a question of fact whether it was negligence to make the attempt. [K. & G. Ry. Co. v. Dorough, 72 Tex. 108; Texas, etc., Ry. Co. v. Murphy, 46 Tex. 356.] And in New York is was held that the failure of the train to stop on the invitation of the conductor to "jump on" will not excuse an attempt to board a train that is moving from four to six miles an hour. [Hunter v. Railroad, 112 N. Y. 371.]

In Alabama it was held to be contributory negligence, which barred a recovery, for a person with his arms full of bundles, to attempt to board an electric car while it was running from four to seven miles an hour. [Birmingham Electric Ry. Co. v. Clay, 108 Ala. 233.]

In Mississippi, an aged man, on a dark, cold night, made an attempt to board a moving train while having his valise in his hand. He missed his footing and was dragged one hundred and fifty yards. He was not allowed to recover, al-

though the train had not stopped a reasonable time. [Mc-Murty v. Railroad, 67 Miss. 601.] The same rule of contributory negligence was followed in Vicksburg, etc., Ry. v. Hart, 61 Miss. 468.

In Massachusetts is was held an absolute bar to recovery for a person to board a train at a station after it began to move. [Harvey v. Railroad, 116 Mass. 269.]

In Pennsylvania the same doctrine is adhered to. [N. Y., etc., Ry. Co. v. Enches, 127 Pa. St. 316.]

Beach on Contributory Negligence (3 Ed.), sec. 146, says: "Though the servants of the company fail to observe the time table notice as to the stopping of a train at a station, that fact does not entitle one to disregard the usual prudential considerations which should govern human action, nor does it subject the railroad company to liability for the consequences of an attempt to get upon a train in motion."

In Iowa it is held that where the attempt is made by permission or direction of the conductor, the burden is on the plaintiff to show that the permission or direction relied on was in accordance with the rules and regulations of the company. [Young v. Railroad, 100 Iowa 357.]

In Swigert v. Han. & St. J. R. R. Co., 75 Mo. l. c. 481, the proposition was disposed of in a line as follows: "Whether the plaintiff was guilty of negligence in attempting to get on the train was a question of fact for the jury, inasmuch as the testimony was conflicting in regard to that matter." The negligence charged in that case, however, was in not stopping the train long enough for the plaintiff to get on and in starting the train suddenly while the plaintiff was attempting to board it. The case is made to depend upon the principles announced in Straus v. Railroad, 75 Mo. 185, which was an action for damages for prematurely starting a train before the passenger had time to alight from it, and in which it was held that if sufficient time was not allowed to the passenger to leave the train and he jumped from the train "while its motion was so

slight as to be almost imperceptible,..... .it was for the jury to determine from the age and physical condition of the plaintiff, and the attendant circumstances, whether such act constituted negligence......In such case, the negligence of the company's servants, in prematurely starting the train, will support a recovery, if the act of the passenger, in jumping from the train, should not be found by the jury to amount to concurring negligence."

It is not necessary to consider the converse of the proposition, under what circumstances a passenger may jump from a moving train without barring a recovery. For it is plain from the petition that the pleader in this case attempted to bring the case partly within the rule laid down in the case of Straus v. Railroad, *supra*, and to justify his boarding the moving train, "while its motion was so slight as to be almost imperceptible," or as he stated it in the petition, the train "slowed up, coming almost to a stop," and partly within the rule of an "invitation of defendant's agents and servants in charge of said train," and that he has wholly failed to establish either proposition by the evidence adduced, but on the contrary has proved by his own testimony that the train stopped before he boarded it, but started before he was seated, and he does not show that he had not been allowed sufficient time to be seated before the train started, while on the contrary the physical facts show that he had sufficient time.

The following rules are fairly deducible from the adjudicated cases: 1, It is the duty of a carrier of passengers to stop a reasonable time for passengers to board the train, and for them to be seated; 2, the carrier may start the train before the passenger has time to be seated, but in so doing it must exercise the utmost care so as not to upset him; 3, a person who boards a train that is moving more than four miles an hour, is guilty of contributory negligence, which will bar a recovery, even if he is invited or directed by the persons in charge of the train to "jump on," or if it is

the custom of the carrier to receive passengers while the train is moving; 4, a person may board a slowly moving train if put to an election of alternative dangers, or if directed or invited to do so by the act or invitation of those in charge of the train, or if a situation is created by those in charge of the train which interferes to some extent with his free agency and is calculated to divert his attention from the danger and create a confidence that he can do so in safety, but in such cases it is a question of fact for the jury whether the act of the passenger amounts to concurring negligence; 5, a carrier must allow a longer time for sick and aged persons, delicate women and the lame, to board the car, if their condition be known to the carrier or be plainly discernable, than for persons in good health and under no such disability.

Measured by these rules the petition stated a good cause of action, and if the evidence had tended to support the allegations of the petition we would not interfere, but the plaintiff proved a different state of facts from those alleged, and waiving the question of variance, which the defendant did not timely object to, the facts proved do not show any negligence on the part of the defendant, but on the contrary show clearly that the plaintiff himself was negligent, and therefore the demurrer to the evidence should have been sustained.

## II.

The first instruction given for the plaintiff is erroneous. Much has been written and said about the duty of a carrier of passengers to stop for a longer time to enable sick, aged and infirm persons, delicate women and the lame, to board or alight from a train [Hutchinson on Carriers (2 Ed.), sec. 670 and cases cited], than is required for persons under ordinary conditions, but it will not profit us to discuss the proposition here, inasmuch as the plaintiff's correction of the otherwise concededly correct statement of facts made by the

defendant shows, that although the plaintiff was about sixty-four years old at the time of the accident, "he was in better health than he had been in his life, and that his physical conditions were very good." There was, therefore, no proper case presented for the application of the rule requiring a longer stop for the plaintiff than for any other able-bodied man to get on the train, and certainly nothing which entitled this plaintiff to invoke the rule laid down as to sick, aged and infirm persons, delicate women and the lame. The instruction was therefore improperly given because there was no evidence in the case upon which it could be predicated.

## III.

I think the damages are excessive. The petition claims $5,000 damages, of which $200 is claimed for medical services and medicines already paid, and $1,000 for the same hereafter to be expended, and $2,000 for loss of earning capacity. There was no testimony offered as to any money paid by the plaintiff for such medical services or medicines, nor that it will hereafter be necessary for him to incur such expense, nor that his earning capacity is permanently impaired, nor what his earning capacity was or the profits of his labor amounted to before the accident. Therefore his claim for $3,200 of the $5,000 damages claimed is eliminated from the case. This leaves only $1,800 of the $5,000 claimed, for his physical injuries, pain and anguish. The verdict is for $3,500, which therefore is $1,700 in excess of the damages claimed in respect to the only matter concerning which any evidence was introduced, and the verdict is therefore excessive to that amount, in any event. The plaintiff having separated his claim for damages in his petition, he is bound thereby.

For these reasons I think the judgment of the circuit court should be reversed and the cause remanded. *Sherwood* and *Robinson, JJ.*, concur herein.