ALLEN v. ST. LOUIS TRANSIT COMPANY, ST. LOUIS TRACTION COMPANY, and the UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellants.

### Division One, July 1, 1904.

1. **PLEADING: Contributory Negligence: Confession and Avoidance.** Any plea of contributory negligence must be a plea of confession and avoidance. But where the statements in the answer mean that plaintiff did not use the appliance with ordinary care, it should not be construed as meaning that the appliance was dangerous if used with ordinary care, and, therefore, a confession that plaintiff, a passenger on a street car, was entitled to recover.

2. **CONTRIBUTORY NEGLIGENCE: Matter for Jury.** Unless the evidence of contributory negligence is so clear that there is no reasonable ground for two opinions about it, the court can not pronounce the injured party's acts contributory negligence as a matter of law, but should submit the case to the jury to decide the point as a matter of fact.

3. ————: ————: **Distance Between Cars: Looking.** Plaintiff, a city-bred man, was struck by a passing car on another track, as he was stepping down from the front platform of the grip-car on to the running-board, for the purpose of mounting to a seat behind the gripman's station. Plaintiff's evidence tended to show that the distance between the handholds on the stanchions was only thirteen inches, that the handhold which plaintiff had seized was torn off by the accident, and the defendant's evidence tended to show that the distance was from 28 to 30 inches, and plaintiff testified that he did not look for the com-

ing of the car on the other track. *Held*, that it was a matter for the jury to decide whether under all the circumstances plaintiff was guilty of such contributory negligence as barred his recovery. *Held*, also, that if the space between the cars was such as plaintiff's testimony tended to show, it was a question for the jury to determine whether or not the operation of the cars that close together was compatible with the duty defendant owed its passengers, and, therefore, it was for them to determine whether or not defendant was guilty of negligence.

4. **NEGLIGENCE: Carrier and Passenger: General Charge.** The facts that the plaintiff was a passenger in the care of the defendant as a carrier of passengers and was injured while that relation existed, are not facts sufficient in themselves to create a presumption of negligence. The petition must refer the accident to some defective appliance or some conduct of the defendant's servants. And if the petition simply charges that the injury was "caused by the negligence of defendant and its servants" a motion to make more specific should be sustained.

5. ———: ———: ———: **General Instructions.** The instructions should submit to the jury the issues they are to try. They should not permit plaintiff to recover on any unspecified theory of negligence whatsoever which a carrier may commit against a passenger.

6. ———: ———: ———: **Verdict in Disregard to Instructions: Defendant's Specific Instructions.** Where the instructions for plaintiff do not specify any facts which, if found to be true, would authorize a verdict for him, and those given for defendant specify in detail the various acts of negligence brought out by the evidence and tell the jury in every case that they do not constitute negligence, the verdict for plaintiff can not stand, for no issue was submitted to them which authorized them to find for him.

7. **CONTRIBUTORY NEGLIGENCE: Instructions: Reference to Others.** Where reference is made in an instruction given to other instructions refused, it was error to refuse those instructions if no other instruction given covered the evidence, on the point of contributory negligence, of the party asking the instruction.

8. **NEGLIGENCE: Carrier: Notices In Street Cars.** There is no duty devolving upon a street car company to post notices in its cars warning passengers to keep off the inner footboard, and under the facts of this case it was error to refuse an instruction for the company which so declares.

9. ———: ———: **Expert Testimony: Footboards.** Where the jury are as competent to decide as an expert witness whether or not plaintiff's position on a street car, for instance, his standing on the inner footboard of the grip car, is safe, the evidence of experts should not be admitted.

10. ———: **Hearsay.** Hearsay evidence should be excluded whether offered by plaintiff or by defendant to meet plaintiff's hearsay. Plaintiff offered evidence tending to show that, prior to his being struck by a passenger car on the other track while standing on the inner footboard of defendant's grip-car, reports had been made to an officer of the company of other accidents to persons riding on the inner footboard, and defendants offered to prove by this officer that the other accidents occurred by reason of the fact that the persons injured leaned out towards the passenger car. *Held,* that the entire evidence was hearsay and incompetent.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz,* Judge.

REVERSED AND REMANDED.

*Geo. W. Easley* with *Boyle, Priest & Lehmann* for appellants.

(1) The motion to require plaintiff to make his amended petition more definite and certain should have been sustained. The allegation that plaintiff was injured by the negligence of defendants is insufficient. Conley v. Railroad, 109 N. C. 692; s. c., 14 S. E. 303. The only exception to this well-established rule of pleading is in passenger cases, where the specific facts alleged raise a presumption of negligence. The presumption of negligence is raised by the accident being caused in the following character of cases: (a) Collision of vehicle in which the passenger was being carried with another vehicle or object. This character of presumption is well illustrated by the following cases: Clark v. Railroad, 127 Mo. 197; Feary v. Railroad, 62 S. W. 542; Shuber v. Railroad, 87 Mo. App. 618; Olsen v. Railroad, 152 Mo. 426; Huelsenkamp v. Railroad, 37 Mo. 553; Barton v.

Railroad, 52 Mo. 256; Seymour v. Railroad, 114 Mo. 275; Sweeney v. Railroad, 150 Mo. 385; Bertram v. Railroad, 154 Mo. 639; Wilkerson v. Railroad, 26 Mo. App. 144; Magoffin v. Railroad, 102 Mo. 540; Rinard v. Railroad, 64 S. W. 127. (b) Where the carrier's vehicle broke down. Lemon v. Chandler, 88 Mo. 533. (c) Where the carrier's vehicle was derailed. Hipley v. Railroad, 88 Mo. 351; Furnish v. Railroad, 102 Mo. 453; Feary v. Railroad, 62 S. W. 542; Wilkerson v. Railroad, 26 Mo. App. 144. The other Missouri cases relied on by plaintiff can not be classified under any of the classes of injury that raise a presumption of negligence. The pleadings in these cases generally allege the specific negligence. Dougherty v. Railroad, 81 Mo. 325; Barth v. Railroad, 142 Mo. 535; McDonald v. Railroad, 127 Mo. 43; Webb v. Railroad, 100 Mo. 194; Winters v. Railroad, 99 Mo. 509; Humbert v. Railroad, 110 Mo. 76; Hiltz v. Railroad, 101 Mo. 36; Van Natta v. Railroad, 133 Mo. 13; Bambridge v. Railroad, 36 Mo. App. 669; Benham v. Taylor, 66 Mo. App. 308; Wills v. Railroad, 44 Mo. App. 51. (2) The evidence of the witnesses McCabe and Brown as to their conclusions as to whether a person could safely stand upon the inner running-board of the car, was improper and should have been excluded. It was merely the opinion of the witnesses. The facts should have been stated, and the jury left to draw their own conclusions, uninfluenced by the opinions of these witnesses. Koenig v. Railroad, 173 Mo. 698. (3) The court erred in overruling defendants' demurrer to plaintiff's evidence. Where the facts are undisputed, it is a question of law as to whether the plaintiff was guilty of contributory negligence or not. Beach on Con. Neg. (3 Rev. Ed.), sec. 444; State to use v. Railroad, 84 Md. 163. The demurrer should have been given for the further reason that there was no evidence of any negligence on the part of defendants. The defendants were under no duty to prevent plaintiff's going on the running-boards, and

such failure was not negligence.   Craighead v. Railroad,
123 N. Y. 391.   Nor was it negligence not to have screens
and bars erected to keep plaintiff off the inner running-
board.   State to use v. Railroad, 84 Md. 163.   No pre-
sumption of negligence arises from the unexplained fact
of an injury.   The cause, or at least the nature of the
accident, must be shown, for it is upon those facts that
a presumption of negligence must rest.   Saunders v.
Railroad, 6 So. Dak. 40; Hite v. Railroad, 130 Mo. 137;
Bartley v. Railroad, 148 Mo. 141; Choate v. Railroad,
36 S. W. 246; Nugent v. Railroad, 73 Conn. 139.   The
burden of proof was on plaintiff to show that there were
neither seats nor standing room on the cars, and that
plaintiff was proceeding with his back to the approach-
ing car, and that such position of plaintiff was assumed
from necessity, not from choice.   Gilly v. Railroad
(La.), 21 So. 852.   (4)   The trial court erred in giving
the first instruction on behalf of plaintiff.   That instruc-
tion is erroneous in these particulars:   (a) It is so gen-
eral that it does not submit to the jury any question of
fact to be passed upon.   The court by this instruction
merely delegated to the jury a work which it should have
performed.   Homuth v. Railroad, 129 Mo. 642.   The
facts of this case raise no presumption of negligence
on the part of defendants.   Hite v. Railroad, 130 Mo.
137; Bartley v. Railroad, 148 Mo. 141; Choate v. Rail-
road (Tex.), 36 S. W. 246; Stewart v. Railroad, 146
Mass. 605; Saunders v. Railroad, 6 So. Dak. 40; Nugent
v. Railroad, 73 Conn. 139; Flynn v. Railroad, 67 N. J.
L. 546.   (b)   This instruction ignores the second and
third defenses in the answer.   These defenses were that
the plaintiff unnecessarily went upon the inner running-
board of the car, when he might have been seated upon
the other side of the grip-car, or taken a seat in the
trailer, and that he did not look or listen before step-
ping on the inner running-board.   This was a good de-
fense.   Gilly v. Railroad (La.), 2 So. 852.   (5)   The
court erred in giving instruction six on its own motion.

The instruction very properly asserts that the failure to post notices warning people to keep off the running-board was not negligence, because the law imposes no such duty. (6) The court erred in refusing the sixteenth and seventeenth instructions asked by defendants.

*Finkelnburg, Nagel & Kirby* and *E. T. Allen* for respondent.

(1) (a) The defendants, after overruling of motion to make petition more definite and certain, filed an answer, and thereby waived any right to have that action now reviewed. Leise v. Meyer, 143 Mo. 556; Bernard v. Mott, 89 Mo. App. 403; State ex rel. v. Bank, 160 Mo. 646; Bungenstock v. Dis., 163 Mo. 218; Sanguinett v. Webster, 153 Mo. 343; Estes v. Shoe Co., 155 Mo. 583; Seckinger v. Mfg. Co., 129 Mo. 590; Holt v. Cannon, 114 Mo. 514; Sauter v. Leveridge, 103 Mo. 615; Paddock v. Somes, 102 Mo. 226; Scovill v. Glasner, 79 Mo. 449; Strauss v. Transit Co., 77 S. W. 156; Shuler v. Railroad, 87 Mo. App. 618; Gale v. Foss, 47 Mo. 276; Ely v. Porter, 58 Mo. 158. (b) The action of the court in overruling the motion was correct. The petition alleged that plaintiff, as quickly as possible after boarding the car, as a passenger, was going to a seat along the only way provided, and without any want of care on his part, was stricken from the footboard and run over by one of defendants' trains on the parallel track, and that such striking was the result of defendants' negligence, and so forth. It was sufficiently definite. Coudy v. Railroad, 85 Mo. 79; Dougherty v. Railroad, 81 Mo. 325; Barth v. Railroad, 142 Mo. 535; Murphy v. Railroad, 43 Mo. App. 347; Hite v. Railroad, 130 Mo. 136. (c) An allegation specifying the act done, the doing of which caused the injury, and averring that it was negligently done, will suffice in any case. Schneider v. Railroad, 75 Mo. 296; Mack v. Railroad, 77 Mo.

233; Crane v. Railroad, 87 Mo. 595; Sullivan v. Railroad, 97 Mo. 117; Pope v. Railroad, 99 Mo. 403; Rinard v. Railroad, 164 Mo. 270. (d) As a general proposition a passenger need only allege the relation, the injury, and that it was due to the negligence of the carrier, to state a cause of action. Johnson v. Railroad, 173 Mo. 307; Feary v. Railroad, 162 Mo. 96; Gleeson v. Railroad, 140 U. S. 443. (e) The striking of a passenger off a car by a car coming in the opposite direction, before he has time to get a seat, can not be said to be an ordinary incident of prudent and careful management of trains taking up passengers, but the striking itself speaks loudly of gross negligence. Johnson v. Railroad, 173 Mo. 307; Bertram v. Railroad, 154 Mo. 655; Barth v. Railroad, 142 Mo. 550; Dougherty v. Railroad, 97 Mo. 647, 81 Mo. 325; Parks v. Railroad, 77 S. W. 72; Sweeney v. Railroad, 150 Mo. 385; Weber v. Railroad, 100 Mo. 194; Seymour v. Railroad, 114 Mo. 273; Wilmot v. Railroad, 106 Mo. 543; Huelsenkamp v. Railroad, 37 Mo. 553. (2) A careful examination of the pleadings in this case, in the light of well-settled law as laid down by this court, will show that, after the filing of the answer, the only questions left open were, first whether the verdict should be against all the defendants, or against any two, or against only one; and, second, what should be the amount of damages. The stipulation that if the verdict should be against any one defendant it should be against all, eliminated the first question. There was left, then, for the consideration of the jury, the sole question of amount. of damages. (3) There was no error in permitting McCabe to testify that a man standing sideways opposite one of the brass handles, upon a moving car, would not clear the moving car on the other track. Neither was it error to permit Brown to testify that a man of his size could not stand up riding on the platform, between moving cars, without leaning in. Mc-

Cabe and Brown were both conductors of the line, were fully acquainted with all the facts, and had theretofore stated them. (a) The testimony complained of was not of the class of conclusions which are incompetent. Eyerman v. Sheehan, 52 Mo. 221; Greenwell v. Crow, 73 Mo. 638; State v. Patrick, 107 Mo. 174; Olsen v. Railroad, 152 Mo. 426; Kaminski v. Works, 167 Mo. 462; Muth v. Railroad, 87 Mo. App. 434; Heman v. O'Brien, 81 Mo. App. 639; Taylor v. Jackson, 83 Mo. App. 649; Walker v. Davis, 83 Mo. App. 378. (b) The answers admitted that a person could not move along or stand upon the inner footboard without being hit by a passing car. the testimony complained of could not have affected the result. Gould v. Trowbridge, 32 Mo. 294; Gardner v. Railroad, 135 Mo. 100; Water Co. v. Lamar, 140 Mo. 158; Perrette v. City, 162 Mo. 252. (c) There was other testimony of like character introduced by defendants. Morton v. Heidorn, 135 Mo. 614; State v. Palmer, 161 Mo. 174; State v. Goddard, 162 Mo. 227. The evidence was merely cumulative. (4) The evidence excluded as complained of in the assignment of errors No. 6, was not only incompetent, either being mere hearsay, or a conclusion, but it was also immaterial. The offer was to prove investigations by Mahoney showing that all accidents were due to leaning out. (a) It would have been in direct conflict with the admissions in paragraphs 2 and 3 of the answer that a person on the inner footboard would be hit by a passing car. McAdow v. Miltenberger, 75 Mo. App. 357; Weil v. Posten, 77 Mo. 284; Wilson v. Albert, 89 Mo. 537; Kaminski v. Works, 167 Mo. 462. (b) Both Green and Mahoney had testified that a passenger on the footboard could not be struck except by leaning out. It was merely cumulative in any event. (5) First. Is there evidence conclusive of plaintiff's contributory negligence? If not it was not error to refuse to give the demurrer to the evidence and instruction 22. Weller v. Railroad, 164 Mo. 180; Erickson v. Railroad, 171 Mo. 666. (a) There

was no vacant seat on the south side of the car. If there was plaintiff was not found guilty of negligence in not taking it. Parks v. Railroad, 77 S. W. 72; Winter v. Railroad, 39 Mo. 468; Huelsenkamp v. Railroad, 37 Mo. 547; Wilmot v. Railroad, 106 Mo. 542; Dougherty v. Railroad, 97 Mo. 655; Seymour v. Railroad, 114 Mo. 273; Sweeney v. Railroad, 150 Mo. 399. (b) He did not unnecessarily go on the inner footboard. That was the only way he could reach a seat. Sweeney v. Railroad, 150 Mo. 398; Thompson on Negligence, sec. 2950; Railroad v. Kelsey, 180 Ill. 533; Erickson v. Railroad, 171 Mo. 666. (c) A passenger on his way to a seat on a street car is not bound to look and listen for an approaching car on a parallel track. Sweeney v. Railroad, 150 Mo. 399; Seymour v. Railroad, 114 Mo. 272; Huelsenkamp v. Railroad, 37 Mo. 540; Erickson v. Railroad, 171 Mo. 666; McDonald v. Railroad, 127 Mo. 43; Dickinson v. Railroad, 53 Mich. 45; Hollingsworth v. Railroad, 21 Ohio C. C. 534; Elliott v. Railroad, 18 R. I. 757; Railroad v. Lee, 50 N. J. L. 435; Gertz v. Railroad, 72 Wis. 307; Railroad v. Higgs, 38 Kan. 375; Railroad v. Williams, 140 Ill. 275; Railroad v. Leonhardt, 66 Md. 70; Grays v. Railroad, 61 Hun 212; Cogewell v. Railroad, 5 Wash. 47; Railroad v. Dwyer, 5 Colo. 153; Dahlberg v. Railroad, 32 Minn. 404; Sumner v. Railroad, 34 La. Ann. 139; Bruno v. Railroad, 25 N. Y. S. 507; Beimbead v. Railroad, 198 Pa. St. 961; Railroad v. Meil (Ind.), 59 N. E. 491; Railroad v. Hoffman, 23 Ind. App. 614; Hesse v. Railroad, 75 Conn. 571. (d) Plaintiff had seen one train pass on the other track, and he had a right to assume that no other train would pass before he could reach a seat. Rainbridge v. Railroad, 36 Mo. App. 684. (e) A passenger's attention in going to a seat should be directed towards the inside of the car. Condition outside the car, over which the carrier has absolute control, should occupy the attention of the carrier, and not the passenger. Henderson v. Railroad, 61 N. Y. Supp. 690; Wilmot v.

Railroad, 106 Mo. 542. Second. The answer admits that by reason of the close proximity of passing cars on the north track, the inner footboard was an unsafe passageway to a seat; that a person thereon would be hit by a pasing car, and alleges that it was the duty of such passenger to look and listen for the approaching car, and remain off the footboard, and thereby avoid being struck. This is a positive admission of negligence. (a) In constructing these tracks so close together that passengers could not move to a seat on the footboard without being struck by a passing car, or so close that they would be exposed to loss of life or limb by a slight turn of the body sidewise, or a slight inclination of it backward. Elliott v. Railroad, 18 R. I. 757, 23 L. R. A. 209; Railroad v. Williams, 140 Ill. 275; Sumner v. Railroad, 34 La. Ann. 139; Railroad v. Leonhardt, 66 Md. 70; Dickson v. Railroad, 53 Mich. 45; Dahlberg v. Railroad, 32 Minn. 404. (b) In using cars of the character in question, on tracks so close. Defendants had other perfectly safe cars. Mather v. Rillston, 156 U. S. 391. (c) Whether bars or screens should have been used was a question for the jury, and not for the court. Thompson on Negligence, sec. 2975; Gleeson v. Railroad, 140 U. S. 435. (d) Whether or not the defend- ants were guilty of negligence in using such cars was a question for the jury. (6) (a) The first instruction was not too general. The jury were told that it was the duty of defendants to provide plaintiff with as safe access to seats on said car as a high degree of care required, and so forth, and if the striking and running over plaintiff was due to failure to exercise such care, defendants were negligent. Johnson v. Railroad, 173 Mo. 315; Reno v. City, 169 Mo. 658; Moore v. Railroad, 73 Mo. 438. (b) Defendant procured the giving of instructions 4, 5, 7, 8, 9, 10, 11, and 12 in which the duty of defendants was fully defined. Johnson v. Railroad, 173 Mo. 316; Grace v. Railroad, 156 Mo. 295; Anderson v. Railroad, 161 Mo. 411; Perrett v. City, 162 Mo. 238.

(c) Instructions 13, 14 and 15 fully submitted the alleged defenses.    Hughes v. Railroad, 127 Mo. 447; Owens v. Railroad, 95 Mo. 170.  (d)  If defendants procured improper instructions to be given in their favor, which are in conflict with correct instructions given for plaintiff, the judgment should not be disturbed on that account.    Erickson v. Railroad, 171 Mo. 666; Roe v. Bank, 167 Mo. 427; Francis v. Railroad, 127 Mo. 675; Reardon v. Railroad, 114 Mo. 384.   (e)  The judgment was for the right party and the verdict should not be disturbed, notwithstanding error in instructions may have been made.  Homuth v. Railroad, 129 Mo. 642. (f) The answer admits the inner footboard was unsafe while cars were passing.  Kaminski v. Works, 167 Mo. 462; Wilson v. Albert, 89 Mo. 537; Weil v. Posten, 77 Mo. 284; McAdow v. Miltenberger, 75 Mo. App. 357. (g)  The sixth instruction asked by the defendants was modified by the court.   The answer admitted that the inner footboard was an unsafe access to seats.  The instructions to conductors were not to use the inner footboard.  Whether the failure to post notices was negligence was a question for the jury.  Schmidt v. Railroad, 163 Mo. 645; Cobb v. Railroad, 149 Mo. 140; Griffith v. Railroad, 98 Mo. 174.  If the instruction asked was proper, the modification has not made it improper. It means no less or more as asked than as given.

VALLIANT, J.—On October 9, 1900, the defendants were operating a double-track street railroad in Lafayette avenue in St. Louis lying east and west.  At that date defendants' cars were drawn by cable power. Its trains were composed of what was called a grip-car, and a closed car called a trailer.  The grip-car was open at the sides, the seats arranged crosswise, with a closed aisle in the middle for the gripman to occupy, and the roof was supported by stanchions on both sides at the outer ends of the seats.  The seats were reached by the passengers by a board running lengthwise along each

side of the car forming a step and called a running-board or footboard. There was a front and a back platform. The gripman stood near the center of the car in the closed aisle. The only way for a passenger to go from one side of the car to a seat on the other was across the front or the rear platform, thence along the running-board to the seat desired.

The two tracks lay parallel, with a space about four feet in width between them, the south track for the east-bound trains, the north track for the trains west-bound.

On the day above named the plaintiff boarded the grip-car of an east-bound train to be carried down town to his place of business. He got on the running-board on the south side of the car; seeing a vacant seat on the other side which he desired to take, he walked along the running-board to the front platform, crossed the platform, and taking hold of a stanchion with his left hand and of a handhold on the dashboard with his right, stepped down on the running-board on the north side, then letting go the hold of his right hand turned his body to the west, aiming to catch the next stanchion with that hand. While in that act he was struck by a west-bound car, knocked off and received very severe injuries. This suit is to recover damages for those injuries. The petition alleges in general terms that the accident was "caused by the negligence, carelessness and recklessness of defendants and their officers, agents, servants and employees."

The answer was a general denial and a plea of contributory negligence. The acts specified as negligence on the part of the plaintiff are:

"1. Unnecessarily going upon the inner running-board or footboard on the car when he might have taken a seat on the side of the car on which he first entered and thereby avoided all chance of injury.

"2. In going upon the inner running- or footboard of the car at a time and place where a car was likely to

pass on the other track, without either looking or listening to see or hear whether another car was likely to pass on said other track or not, while he was on said inner or running footboard; when by looking or listening, he might have seen and heard the said car upon said other track, and remained off said running-board until said other car had passed, and thereby have avoided being struck by said passing car.

"3. In leaning outwardly from the car upon the foot- or running-board on which he was standing, so far as to come in contact with the passing car, when, had he exercised a reasonable care for his own safety, and stood perpendicularly upon the running- or footboard upon which he was standing, said passing car would not have struck him; and that the collision between the passing car and the plaintiff was caused by his leaning outwardly in the direction of the passing car."

The reply was a general denial.

The trial resulted in a verdict for the plaintiff for $15,000 and judgment accordingly, from which the defendants appeal. The assignments of error relate to the rulings of the court on the introduction of evidence, and to the instructions given and refused. So much of the evidence as is necessary to an understanding of these assignments will be referred to hereinafter, as will be also the instructions.

I. In the brief for respondent it is contended that the statements in the answer amount to a confession of the plaintiff's right to recover and that the only question left open is as to the amount of damages. The idea advanced is that the statements in the plea of contributory negligence assume that the arrangement or plan of the car was a dangerous contrivance and, therefore, the defendants were guilty of negligence in putting it into public service. It would seem on reason that any plea of contributory negligence must be a plea of confession and avoidance. If the facts stated in the plea only go to show that it was the plaintiff's own

negligence and nothing more that caused the accident those facts could be proven under the general denial, because if it was the plaintiff's negligence only, it was in no part defendant's negligence. Under a general denial the defendant may prove any fact which shows that the plaintiff never had any cause of action. But where an affirmative defense is offered it logically carries the idea that a cause of action once existed, but has ceased because of the facts pleaded in the answer or that a cause of action would have arisen out of the facts set out in the petition but for the additional cotemporaneous facts pleaded in the answer. Perhaps under the provision of our code (sec. 626, R. S. 1899), authorizing a party to plead alternatively, it would be proper for a defendant in his answer to deny the cause of action and yet say that because of certain other facts if the plaintiff ever had a cause of action it has ceased, or that he would have had a cause of action but for the facts stated in the answer.

The rules of pleading as they relate to the defense of contributory negligence are not very definite on the particular point here referred to. [1 Thompson on Neg., sec. 367.] It is the rule in this State that contributory negligence is an affirmative defense and to enable a defendant to introduce proof of it he must plead it, but if the plaintiff in his effort to prove his own case shows that he was guilty of negligence that contributed to the injury complained of, the defendant may avail himself of that showing, although no plea of contributory negligence has been filed.

The answer in this case does not go to the extent of admitting that the arrangement of the car was in itself, or when used with proper care, a dangerous contrivance, but that the danger arose from the manner in which the plaintiff used it. The idea is that, in the first place, there was no necessity for his going on that side of the car; second, that he incurred danger by attempting to use the footboard in the face of a car coming

from the opposite direction, and, third that instead of using reasonable care to hold himself erect when on the footboard he leaned outward toward the danger.

The answer is not susceptible of the construction that the appliance was dangerous if used with ordinary care; it only means that the plaintiff did not use it with ordinary care.

II.  At the close of the plaintiff's case the defendants demurred to the evidence, the court overruled the demurrer and an exception was taken.  Appellants now insist on that demurrer.

There is not a great deal of conflict in the testimony, the point on which the difference is most serious is the distance between the two passing cars.  The evidence showed that on the stanchions were brass handholds standing out three inches, for the use of persons passing along the footboard.  There was evidence for the plaintiff tending to show that when two cars were side by side on the two tracks the space from the outside of the handhold on one car to that on the other car, was thirteen inches, and measuring from the outer end of the seat of one car to that of the other was eighteen inches. The evidence for defendant tended to prove that the footboards were each nine inches wide, that they were set one inch from the body of the car and the space between the footboards of the two cars was ten inches.

The plaintiff's evidence showed that he was a man of intelligence and learning, city-reared, and was accustomed to using cars of this kind.  The gripman on the west-bound car that struck the plaintiff was a witness in his behalf.  He testified that as he approached the east-bound car he saw the plaintiff on the front platform; "the east-bound train had not stopped; it slowed up and I kept watching the train all the way until I thought that everything was safe, and ran up pretty close.  I noticed Mr. Allen had his back to me; I thought to myself, everything is clear; he seemed to be stopped; I was going at full speed of the rope; all at once I heard

the remark, 'Lord have mercy; he has killed him.' I stopped my train in about fifteen feet of him.'' He said he had no recollection whether or not on approaching the east-bound train he rang the gong, but ''I do not think I rang it.'' On cross-examination he said: ''He (Mr. Allen) stepped down just about the time the front end of the car met that one; he stepped right down; the second roof-post of my car struck him; it broke the brass handrail off.'' On further cross-examination he said that as he approached he was watching the plaintiff to see if he was going to get down on the running-board, and was prepared to give the signal and stop the car, but plaintiff's acts indicated that he was going to remain where he was and witness went on. This was not an unfriendly witness to plaintiff; there was nothing either of bias or prejudice appearing in his testimony.

The plaintiff as a witness in his own behalf testified that he did not see the west-bound train coming towards him, that he did not look, that if he had looked he would have seen it.

Defendants insist that the demurrer to the evidence should have been sustained on the ground that the plaintiff's own evidence showed that he was guilty of negligence which contributed to the accident.

The evidence did tend to show that the plaintiff was guilty of negligence, but unless it was of a character so clear that there was no reasonable ground for two opinions about it the court could not pronounce it contributory negligence as a matter of law, but it should have been submitted to the jury to decide as a matter of fact.

There was evidence from which the jury might conclude that whatever danger there was in the use of the car and its appliances as described by the witnesses was known to the plaintiff. It was a car of the plan in ordinary use and had been so for years, and the plaintiff was a city man accustomed to seeing such cars. If the cars were of such a character that they could be used

with safety by passengers who exercised ordinary care
in using them, then the triers of fact might conclude
that this plaintiff did not exercise ordinary care when
this accident occurred.   But if the distance between
them was so little that a passenger even though he ex-
ercised ordinary care was liable to be knocked off by a
passing car, then the question of fact would arise, what
opportunity did the plaintiff have of knowing the dan-
ger? and in answering that question the jury would con-
sider the extent of the plaintiff's familiarity with the
subject and to what extent the danger was discernible
to one in the plaintiff's situation.  In passing on those
questions the jury might conclude that the more dan-
gerous was the plan of the cars, if it was known, or
was obvious, the greater should have been the care of
the plaintiff to look in the direction from which a car
was to be expected before stepping on the running-
board.  And on the other hand if there was a distance
of from twenty-eight to thirty inches between the cars,
as defendants' evidence tended to prove, a less degree
of caution might become necessary to keep the passen-
ger within the limits of reasonable care.   These points
are suggested only for the purpose of illustrating the
proposition that the evidence in this case was such as to
fairly raise the question whether or not the plaintiff was
guilty of negligence that contributed to his injury, but
it was not such as to justify the court in taking the case
from the jury.

Defendants also think that the case should have
been taken from the jury on the ground that there was
no evidence tending to prove negligence on the part of
the defendants. If the space between the cars was as
narrow as the plaintiff's testimony tended to show that
it was, it became a question for the jury whether or not
the operating of cars of that kind within that dis-
tance of each other was compatible with the duty de-
fendants owed its passengers.   There was no error in
overruling the demurrer to the evidence.

III.   The instructions given are quite voluminous and for that reason we will not copy them here in full but state their substance as briefly as possible.

The first instruction given for the plaintiff was to the effect that after the plaintiff boarded the car "then it was the duty of said defendant or defendants to provide plaintiff, not only a safe track, roadbed and car, but also as safe an access to the seats on said cars as a high degree of care and foresight could provide" as described in another instruction. "And if the jury further find from the evidence that immediately thereafter (that is, after he had boarded the car) the plaintiff was going along the inner footboard to a seat, and was exercising such care as ordinarily prudent men would exercise under similar circumstances, and that while doing so, he was stricken from the car he was riding on, by a west-bound train on the north track of said railway, and run over by one or both of said cars, and thereby injured, and that such striking and running over of plaintiff, and the injuries he sustained thereby, were caused by the failure on the part of said defendant or defendants, their servants, agents or employees, to exercise the high degree of care and foresight incumbent upon the carriers of passengers, as described in another instruction, then plaintiff is entitled to recover."

In the second instruction for plaintiff the jury were informed "that the law requires a carrier of passengers to exercise the highest practicable care, diligence and skill for the safety of his passengers, which a prudent and cautious person would observe in a like business and under similar circumstances." And that the care required of a passenger is ordinary care, "by which is meant such care as a person of ordinary prudence would ordinarily exercise under the same or similar circumstances."

There was no other instruction given for the plaintiff indicating what facts the jury should find in order to authorize them to find the defendants guilty of negligence.

At the request of the defendants the court gave numerous instructions numbered 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 18, and 19, to the effect as follows:

4. Referring to the terms of a stipulation of the parties which gave a history of the construction and former ownership of the street railroad tracks and cars, the changes in its motive power, the final transfer of the franchises and property to the defendants, the one as owner and the other as lessee and concluding as follows: "then the defendants had the lawful right to continue the operation of said cars and tracks so provided and operated by the Peoples Railway and its receiver, and the continuance of such operation was not such negligence as will entitle the plaintiff to recover in this action and the plaintiff is not entitled to recover on that ground."

5. The defendant had a right to run as many trains as it deemed necessary and the fact that this west-bound train was an extra, called a "tripper," did not make the defendant's act negligence.

7. There was no duty devolved on either the gripman or the conductor to prevent the plaintiff going on the inner footboard, and their failure to do so was not negligence.

8. The defendants were under no duty to erect bars or other obstructions to prevent persons old enough and intelligent enough to take care of themselves from going on the inner footboard while the car was under way, and a failure to do so was not negligence.

9. There being no evidence of any derailment, or collision of the cars with each other or failure of the means or appliances for transportation, or of any improper handling of either car, no presumption of negligence can arise from the happening of the accident.

10.   If the gripman· on the west-bound car saw the plaintiff on the front platform and his actions were such as to indicate that he was going to remain there or not step down until the cars passed each other and if he did not in fact step down on the footboard until the front end of the car had passed or was passing him, and it was then too late for the gripman to give warning or stop the car, the gripman was not guilty of negligence.

11.   Although the gripman of the car on which the plaintiff was, saw him on the front platform, yet if the conditions were such that by looking or listening he could have seen or heard the approaching train, the gripman had a right to assume that he would see or hear it and would not go on the footboard until the danger had passed, and if after he did step down on the footboard it was too late for the gripman to stop the car, he was not guilty of negligence.

12.   There was no duty imposed by statute or ordinance on either one of the gripmen to sound his gong under the circumstances given in evidence, and before plaintiff is entitled to recover for failure to sound the gong he must show by a preponderance of evidence that such failure was the direct, immediate and proximate cause of his injuries, and if, notwithstanding the failure to sound the gong, the plaintiff by looking or listening could have seen or heard the west-bound train but failed to look or listen, then the plaintiff was not entitled to recover for failure to ring the gong.

13. No presumption of negligence on the part of the defendants or their employees is to be assumed under the circumstances in evidence in this case, and before the plaintiff can recover he must show by a preponderance of the evidence and not mere speculation that the defendants' negligence caused his injuries; and if the plaintiff's own negligence contributed to the result the verdict should be for the defendants, notwithstanding

the jury should believe that the defendants were also negligent.

14.   If the plaintiff, without direction or suggestion of defendants' servants, went upon the inner footboard when he knew, or by the exercise of reasonable care would have known, that he was liable to be struck by a passing car on the other track, then it was his duty before stepping on the running-board to have looked and listened for an approaching car, and if he failed to do so and that failure on his part contributed to his injuries, he was not entitled to recover.

15.   The law requires a passenger to use reasonable care for his own safety, and while he is in a vehicle of the carrier he has no right to move into a position of danger unless under some existing necessity to do so and if he does and is injured in consequence he cannot recover.   If, therefore, the jury should find that a position on the inner footboard was a position of danger and the plaintiff voluntarily took that position when he could have taken a seat elsewhere in the car until the other train had passed and that when he did so he knew, or by the exercise of ordinary care would have known, the danger, then he assumed the risk and cannot recover.

18.   While the defendant carrier was under the duty of exercising a high degree of care to carry the plaintiff safely yet that did not absolve him from the exercise of such reasonable care for his own protection from the danger, if any, to which his own act in going upon the footboard exposed him, and if he failed to exercise that care and his failure in that respect contributed to the accident, then he is not entitled to recover even if the carrier failed to exercise the high degree of care required of him.

19.   The parties having voluntarily withdrawn the evidence contained in the city ordinance relating to the speed at which a car was authorized to run, there is no evidence authorizing the jury to find that either car was run at an unlawful rate of speed.

If the jury had given obedience to those instructions they could not have rendered a verdict for the plaintiff.

The instructions given at the request of the plaintiff do not specify any facts which, if found by the jury, would require a verdict for the plaintiff, but they leave the jury at liberty to find for the plaintiff if his injuries "were caused by the failure on the part of said defendant or defendants, their servants, agents or employees, to exercise the high degree of care and foresight incumbent upon the carriers of passengers, as described in another instruction." The only other instruction on the subject merely defines the degree of care required of a carrier. So the plaintiff's instructions are equivalent to authorizing the jury to return a verdict for the plaintiff under any theory of negligence which they could construct or evolve out of their own minds.

But the instructions given at the request of the defendants take up every phase of the defendants' acts and of the acts of their servants upon which a possible charge of negligence could be predicated, one by one, and instruct the jury that there is no negligence in it.

Respondent says that those instructions, some of them at least, are erroneous, and that appellants have no right to complain that the verdict is contrary to erroneous instructions of their own asking.

But what confidence can be put in the verdict of a jury that disregards all the instructions given?

When several issues of fact are submitted to the jury and upon either or all of them they might base a verdict, we defer to their judgment; but when there are no issues framed for them, how can we know that the verdict is founded on an issue that was rightfully in the case?

The petition is as indefinite as the plaintiff's instructions, merely charging that the plaintiff was a passenger and received injuries through the negligence

of the defendants. A motion to require the plaintiff to make his petition more definite was overruled. The court in overruling the motion doubtless considered that when a passenger sues a carrier to recover damages for personal injuries received while he was in the care and keeping of the carrier, he has only to state in his petition the facts going to establish the relationship of carrier and passenger, that he received certain injuries, and that they were caused by the negligence of the carrier, without specifying in what that negligence consisted.

If facts are alleged from which the law will draw a presumption of negligence on the part of the carrier, it is sufficient to follow the allegations of such facts with a charge of negligence in general terms; but the facts that the plaintiff was a passenger in the care of the defendant as a carrier and the plaintiff, while that relation existed, received injuries, are not facts sufficient in themselves to create the presumption of negligence. Whilst the plaintiff is not required to specify (for the reason that he generally does not know) the particular in which the defendant's conduct was negligent, yet he must in his statement refer the accident to the failure or breaking of some of the defendant's equipment or the conduct of the agents in charge of the business.

If a collision occurs between two trains of the defendant, or a train is derailed, or a car breaks down, the passenger is not expected to know, and, therefore, not required to state the cause of the occurrence; it is sufficient for him to allege the break-down, the collision, or other such accident, and state generally that it resulted from the defendant's negligence and that the passenger was injured.

Judge THOMPSON states the doctrine thus: "The general rule may be said to be that where an injury happens to the passenger in consequence of the breaking or failure of the vehicle, roadway or other appliance owned or controlled by the carrier, and used by him in making the transit, or in consequence of the act,

omission or mistake of his servants, the person entitled
to sue for the injury makes out a prima facie case for
damages against the carrier, by proving the contract
of carriage, that the accident happened in consequence
of such breaking or failure, or such act, omission or
mistake of his servants, and that in consequence of the
accident, the plaintiff sustained damage." [3 Thompson on Neg., sec. 2754.] It is upon this doctrine of
prima facie presumption of negligence arising when
certain facts are proved, that the rule of pleading above
referred to is founded. One need not plead more than
it is necessary to prove. The author above quoted in
further discussion of the subject says that this presumption arises not from the happening of the accident, but
from a consideration of the cause of the accident, and in
section 2757, Id., he says: "The conclusion then is that
in order to throw upon the carrier of passengers the
burden of disproving his negligence, in case of an injury to a passenger, it must first be shown that the
injury complained of resulted from the breaking of the
carrier's machinery, from a collision, from a derailment
of his cars, or prove something otherwise improper and
unsafe in his appliances of transportation, or in the conduct of his business." That is the doctrine of this court
and it is as far as any of our decisions have gone in the
direction of relieving the plaintiff in such case from the
necessity of specifying the act of the defendant complained of as neglect. [Coudy v. Railroad, 85 Mo. 79;
Seymour v. Railroad, 114 Mo. 275; Clark v. Railroad,
127 Mo. 197; Hite v. Railroad, 130 Mo. 132; Bertram v.
Railroad, 154 Mo. 639; Feary v. Railroad, 162 Mo. 75;
Johnson v. Railroad, 173 Mo. 307.]

In the plaintiff's first instruction the jury are told
that it was the duty of the defendants "to provide for
plaintiff, not only a safe track, roadbed and car, but also
as safe an access to the seats on the cars as a high
degree of care and foresight could provide." The petition does not allege that the defendants failed to furnish

either a safe track, roadbed, car or access to the seats in the car, nor does the instruction submit to the jury the question whether or not there was a safe track, road-bed, car or access to the seats in the car.   The question which the instruction propounds to the jury is, was the plaintiff's injury caused by the negligence of the defendants or their servants, not in respect to the condition of the track, roadbed, car or access to seats in the car, but in any respect whatsoever?  · The instructions for the defendants having practically withdrawn from the consideration of the jury every phase of the case on which it could be said that there was any evidence tending to show negligence, there was no definite issue submitted to the jury and their verdict is responsive to nothing.

Whatever may be said concerning the sufficiency of the petition, when the time came to submit the case to the jury, the instructions should have defined the issues that the jury were to try.   The plaintiff's instructions failed in this respect and were erroneous.

IV.   Instructions 16 and 17 asked by defendants were refused.   They were to the effect that when the plaintiff stepped on the inner footboard, it became his duty to exercise such degree of care as the position he was in rendered reasonably necessary to prevent his being struck by a passing car and if by standing upright and not leaning out he would have avoided being struck, yet failed to observe that care, he was not entitled to recover.

Respondent contends that these instructions were properly refused because the same subject was covered by other instructions and because there was no evidence that the plaintiff leaned outward.

The other instructions referred to as covering the point are instruction 1 for plaintiff and instruction 18 for defendants.

The part of the plaintiff's instruction indicated is: "And if the jury further find from the evidence that

immediately thereafter the plaintiff was going along the inner footboard to a seat and was exercising such care as ordinarily prudent men would exercise under similar circumstances, and that while so doing, he was stricken from the car on which he was riding by a westbound train," etc., then he was entitled to recover.

That mere reference to the care that plaintiff was observing was not all that the defendants were entitled to in the way of an instruction on the question of contributory negligence, nor did defendants' instruction 18 entirely cover the point. Instruction 18 was designed to inform the jury that even if the carrier had failed to observe the high degree of care devolving on him, yet that fact did not absolve the passenger from the duty of exercising the care devolving on him and that if he was negligent "in the respect set out in the other instructions" and such neglect contributed to his injury, he could not recover.

The "other instructions" to which the jury were then referred were these two refused instructions 16 and 17 which specified what would constitute negligence in the plaintiff.

The evidence for the defendants, upon which these instructions were predicated, tended to show that the space between the passing cars in which it was available for a man to stand, was from twenty-eight to thirty inches. If that testimony was true, then it was a legitimate inference for the jury to draw that the plaintiff would not have been struck if he had stood erect on the footboard and not leaned outward. The defendants were entitled to those instructions and it was error to refuse them.

V.   There was evidence tending to show that there were no notices posted in the car warning people to keep off the inner footboard. The defendants asked this instruction: "6. The fact that no notices were posted in the cars warning passengers to keep off the inner footboard was not of itself such negligence as authorizes

the plaintiff to recover in this action." That instruction the court refused, but added to it the following, and gave it: "but the jury are to consider such fact in connection with all the other facts in the case in determining whether the defendants or their servants negligently operated the car upon which plaintiff was a passenger when he received the injuries complained of." The instruction as given meant that the absence of notices was not negligence, but it was evidence of negligence. It was error to have refused the instruction as asked and it was error to have given it as changed. There was no duty devolving as to the defendants to post such notices, and, therefore, the omission to do so was neither negligence, nor evidence of negligence.

VI.    Over the objection of the defendants, plaintiff was permitted to introduce as evidence the opinions of two of his witnesses that it was not safe for a person to stand on the inner footboard of a going car. The objection to that testimony should have been sustained. When the evidence showed the plan of the car, dimensions, distances, etc., as it did, the jury were as competent to form an opinion as to whether a man could safely stand on the footboard as the witness. It was not a case for expert testimony. The jury heard the evidence of the plaintiff and that of the defendants as to the standing room, they saw the plaintiff and could judge as well as anyone whether a man of his size could stand there in safety, using proper care.

VII.    Over the defendants' objection evidence was admitted tending to show that previous to this accident reports had been made to an officer of the company of other accidents to persons riding on the inner footboard. Defendants offered to prove by this officer that upon the reports being made to him, he investigated the cases and found that they occurred by reason of the persons leaning outward towards the passing car. The court sustained plaintiff's objection to that evidence on the ground that it was hearsay. It was undoubtedly

hearsay, but so also was the evidence of the reports made to the officer. If the plaintiff was entitled to prove what someone told the officer, the defendants were entitled to prove what other persons told him when he was investigating the cases. But it was all incompetent. The court should have sustained the defendants' objection.

The judgment is reversed and the cause remanded to the circuit court to be retried according to the law as herein expressed.

All concur.