WALTER E. BRYAN, Respondent, v. UNITED STATES INCANDESCENT LAMP COMPANY, Appellant.

St. Louis Court of Appeals, July 16, 1913.

1. MASTER AND SERVANT: Injury to Servant: Dangerous Appliances: Concurrent Acts of Negligence. In an action by a servant for personal injuries, where the negligence relied on was the maintenance of an open and exposed gas flame in a room in

which there was a dangerous contrivance, consisting of a bottle of gasoline in a box, in which gasoline vapor was generated, through the employment of an electric lamp, with such rapidity as to cause the cork to be blown from the bottle, liberating a sufficient quantity of vapor to occasion an ignition through contact with the gas flame, resulting in plaintiff being severely burned, it was essential to a recovery that the jury find defendant was negligent both with respect to the maintenance of the gas flame and with respect to the contrivance, consisting of the bottle, box and electric lamp.

2. ————: ————: ————: ————: Instructions. In an action by a servant for personal injuries, the negligence relied on was the maintenance of an open and exposed gas flame in a room in which was a contrivance, consisting of a bottle of gasoline in a box, in which gasoline vapor was generated, by means of an electric lamp, with such rapidity as to cause the cork to be blown from the bottle, liberating a sufficient quantity of vapor to cause an ignition through contact with the gas flame, resulting in plaintiff being severely burned. It appeared that vapor escaped from sources other than the contrivance in question, but no negligence was charged with respect thereto. The court instructed the jury that, if plaintiff received his injuries by reason of gasoline vapor taking fire and if in such room there was an unprotected gas flame and a bottle containing gasoline, which, with an electric lamp, was inclosed in a box, "and that by reason of said facts," the stopper in the bottle was often blown out, increasing the amount of vapor in the atmosphere in the room, "and that by reason of said facts," the bottle and light was a negligent, dangerous and unsafe contrivance, and "if defendant knew or should have known these facts, and plaintiff's injuries were directly due to such negligent, dangerous, and unsafe contrivance" and means for providing gasoline vapor in conjunction with the unprotected gas flame, and if the burning of the vapor was occasioned by the gas flame, they should find for plaintiff. Held, that the instruction was erroneous for failing to require a finding that the stopper of the bottle blew out and emitted gasoline vapor sufficient to cause the flames which injured plaintiff, since the evidence showed that the flames could have come from the vapor which escaped from other sources than the contrivance in question, and if they were so caused, defendant would not be liable under the pleadings. Held, further, that if the statement, that "if defendant knew or should have known these facts and plaintiff's injuries were directly due to such negligent, dangerous and unsafe contrivances," etc., did not assume that the contrivance in question was a negligent, dangerous and unsafe one, it was at least liable to mislead the jury, in view of the general, vague and indefinite frame of the instruction, to so believe.

3. NEGLIGENCE: Pleading: Specific Negligence: Instructions. Where specific acts of negligence are alleged, the instructions should confine the issues to such acts and should not authorize a recovery on an unspecified theory of negligence.

4. INSTRUCTIONS: Assumption of Issuable Facts. An assumption in an instruction of an issuable fact is reversible error.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin Allen,* Judge.

REVERSED AND REMANDED.

*A. & J. F. Lee* for appellant.

(1) Plaintiff's instruction No. 1 is erroneous, because: (a) It instructs the jury that the conditions which that instruction tells the jury required a verdict did exist "as facts" and thus took all the material issues from the jury. James v. Railroad, 107 Mo. 484. (b) It was confused and misleading and did not submit to the jury the question of whether there was any gasoline vapor in the room, or an unprotected gas flame, or whether, if either was there, its presence constituted negligence on the part of the defendant. It purported to cover the whole case and direct a finding. It should, therefore, embrace affirmatively or negatively all legal defenses arising under the pleadings and proof. Enloe v. Foundry Co., 240 Mo. 449. In such a case nondirection is misdirection. Sinnamon v. Moore, 161 Mo. App. 177; Fink v. Phelps, 30 Mo. App. 431; Bank v. Metcalf, 29 Mo. App. 395; Beauchamp v. Higgins, 20 Mo. App. 516. (c) It assumed that the placing of the lamp and the light in the box "was such negligent, dangerous and unsafe contrivance and means for providing gasoline vapor" —a material issue in the case. James v. Railroad, supra.

*Kinealy & Kinealy* for respondent.

(1) The first instruction given on behalf of respondent is not erroneous. (a) It does not assume facts but tells the jury same must be found "from the evidence," and it is unnecessary to repeat that direction. Cody v. Gremmler, 121 Mo. App. 359; Kinlen v. Railroad, 216 Mo. 145. (b) In addition to being unsound, appellant's grammatical criticism of the instruction is entirely too technical to be heeded by the courts. Mayor v. Burner, 114 Mo. 426; Haniford v. City of Kansas, 103 Mo. 172; Berkson v. Railroad, 144 Mo. 211. Appellant could not complain if the instruction did assume an uncontroverted fact. Sotebier v. Transit Co., 203 Mo. 702. Or if it required proof by plaintiff of an unnecessary fact. Oehmen v. Partman, 153 Mo. App. 240; Rose v. Railroad, 146 Mo. App. 215; Culver v. Insurance Co., 141 Mo. App. 205. (c) Even were the instruction subject to any substantial objection, same would be entirely remedied by instructions 5 and 8 given at request of appellant, since all the instructions must be read together. Liese v. Meyer, 143 Mo. 547; Norton v. Kramer, 180 Mo. 536; Gibler v. Assn., 203 Mo. 208; State v. Weisman, 238 Mo. 547.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of personal injuries received through the alleged negligence of defendant. Plaintiff recovered and defendant prosecutes the appeal.

Respondent's counsel have prepared, and we copy from their brief, a full, clear and concise statement of the facts touching the controversy. The statement so referred to is as follows:

"In this case the respondent sues for personal injuries sustained by him by being burned on November 25, 1910, in defendant's factory on Jefferson avenue

near Walnut street in St. Louis, in which appellant manufactured incandescent electric light bulbs. Plaintiff went to work regularly for the defendant about the middle of August, 1910, as an engineer, and amongst other duties had charge of the employees in the filament treating room, but was likely at any time to be called to other parts of the factory. In this treating room, carbon filaments were subjected to an electric current in a vapor of gasoline gas, whereby a portion of the gasoline was decomposed and deposited upon the filament. In the defendant's Jefferson avenue factory, which fronted on the west side of Jefferson avenue, it had, at the time plaintiff was hurt, two kinds of filament treating machines, known as the old or hand machines and the new or automatic machines. In the old machines half a dozen of the filaments were placed in metallic clips on a table and then over them was put a glass bell-shaped jar. The air was then drawn out of the jar and gasoline vapor allowed to take its place. When this had been done a current of electricity was run through the filaments for some ten or twelve seconds, and then air again readmitted into the jar which was then raised, and the treated filaments replaced by untreated ones, and the operation was repeated. For use in these machines the gasoline supplied was kept in a bottle, holding about a gallon, under the table. This bottle was closed by a rubber stopper through which a small glass tube passed, and thence a tube composed of alternate sections of glass and rubber tubing led up through the table to the space under the bell-shaped jar. The gasoline supplied could be shut off by means of a clamp fastened over one of the rubber sections of the supply tube. In order to increase the flow of gas from the gasoline in the bottle, the bottle was enclosed in a box with an electric light bulb placed alongside of the bottle. This bulb screwed into a socket in the bottom of the box and could be lighted by simply screwing it

down and unlighted by unscrewing it. The box was lined with asbestos and had a cover which fitted closely around the neck of the bottle, and which, working on a pivot, could be swung back so as to leave the box uncovered. When the cover was in place it would be impossible to see whether or not the electric bulb in the box was burning, unless one stood almost immediately over the box. This was because the cover fitted closely. Every time the bell-shaped jar on the old machines was raised up a certain amount of gasoline gas would be discharged into the atmosphere, and often the pressure would become so great in the bottle that the stopper would blow out or the connections in the tube from the bottle would break, and of course in either of those events gasoline vapor would be discharged into the atmosphere. The old machines were two in number, and were placed along the east end, or Jefferson avenue front, of the filament treating room. The new or automatic machines were four in number placed at a long table running along the south side of the room. These new machines were brass tubes in which the top was simply pulled off, and the filaments inserted in them from the top. The gasoline for use on the new machines was supplied from a gasometer placed on the outside of the building on its south side. In order to stimulate the flow of gas from this gasometer the pipes leading therefrom to the automatic machines were run through a larger pipe, and between the two pipes steam was caused to circulate. This steam was produced by a steam boiler located in the southwest corner of the filamment treating room and the steam was generated in this boiler by a large open flame gas burner placed under the boiler and a few inches from the floor. This treating room was something in the neighborhood of 20x14 feet in size. When the filaments had been treated or 'flashed' as it was technically called, they were afterwards 'spot tested.' This

176 Mo. App. 46

was done on the old machines by simply replacing the treated filaments in the clamp under the bell jar and then withdrawing the air, thereby creating a vacuum, and then running an electric current through the filaments. If it had been well treated the filament would present a uniform appearance of incandescence, but if it was a defective one, spots would be seen upon it. For spot testing, therefore, no gasoline was used. The completion of the installation of the automatic machines in this treating room was about the middle of October, 1910. George W. Budde installed the electric wiring for these automatic machines and while around there acted subordinately to plaintiff Bryan in the treating room. The treating machines were operated by a number of girls. Mr. Ferguson, defendant's superintendent, was warned by Mr. Wallace, the chemist, of the danger of installing the open gas flame under the boiler in this room because of the gasoline vapor. The gasoline vapor, especially in the fall and winter, when it was impossible to properly ventilate the room, became very noticeable, usually in the afternoon, causing the girls to get headaches, and on many occasions having to be excused from work on that account.

"On November 25, 1910, plaintiff Bryan had had some trouble in getting proper results from the automatic machines on a certain kind of filament and during the forenoon of that day he and Miss Brown were working on those filaments on one of the old machines. During the course of the afternoon, while he and Miss Brown were still working on the machine treating filaments, plaintiff Bryan was called by his duties to another department of the factory, and when he went out he told Miss Lillian Taylor, the forewoman in the room, to have Miss Brown, when she had finished the batch she was on, to go to spot testing. At this time Mr. Budde was not in the room. When plaintiff Bryan got back, in about an hour or an hour and a half, Mr. Budde was there working on a valve for one of the au-

tomatic machines. While Budde was so engaged and plaintiff Bryan was doing some work at the east end of the table upon which the automatic machines were, there was a sudden pop under the table of the old or hand machine, at which Grace Brown was sitting. Budde got up and went over to the place and found that there had been a parting at one place between one of the rubber and one of the glass sections of the tube leading from the bottle of gasoline in the box to the bell jar of the machine, and Budde fixed this by simply slipping the end of the rubber section over that of the glass section of the tube and then turned back the top of the box and found the electric bulb therein lighted. He turned this out and went back to his place and had no sooner reached there than there was another and louder pop, and he turned and saw that the rubber stopper had blown out of the bottle and that the gasoline was squirting out of it. He immediately went to the box, picked up the bottle and started to carry it out. In the meantime, Miss Taylor, who was sitting a little distance away, saw the vapor of the gasoline spread along the floor and flow towards the light under the boiler in the southwest corner of the room. It then took fire and Miss Taylor saw the flame rolling back towards the east end of the room and under the table upon which the automatic machines were placed. The result was the whole front of the room was enveloped in flames. Plaintiff Bryan's clothes became on fire and he ran out of the front door on to Jefferson avenue, thence to the south and on to an open lot along the south side of the building. He there saw one of the employees, Miss McKiernan, with part of her clothing one fire, and apparently running back into the building. Plaintiff Bryan, with his clothes still on fire and acting on the impulse of the moment, ran up to her and endeavored to lay her down on the ground to put out the flames on her clothes. He then laid down on the ground himself where there was some grass, and rolled

over and over until his flames were put out. His injuries were exceedingly severe and painful and were permanent.

"The specifications of negligence had reference to the maintenance of the open light under the boiler in the room when gasoline vapor was being, and was likely to be discharged thereinto and in connection with the bottle and box and light arrangement as the means for producing the gasoline vapor. The court gave one instruction for the plaintiff on the right to recover and gave five on behalf of the defendant. There was a verdict in favor of the plaintiff for $5000, and after ineffectually moving for new trial, the defendant brings the case to this court on appeal, complaining only of the action of the court in the matter of instructions."

There are several specifications of negligence in the petition but some of them were abandoned at the trial, and it appears plaintiff relied upon the averment touching the maintenance of an open and exposed gas flame in the room, together with a dangerous contrivance, consisting of a bottle of gasoline in a small box under the machine, in which gasoline vapor was generated through the employment of an electric lamp in the box with the bottle, and the consequent blowing of the cork from the bottle by means of the gas so generated, which operated to emit a sufficient quantity of gasoline vapor to occasion the ignition through coming in contact with the open or exposed gas flame. So, therefore, it appears the specifications of negligence relied upon for a recovery relate, first, to the exposed gas flame under the boiler and, second, to the dangerous contrivance, consisting of a bottle of gasoline and an electric lamp in a box which caused the blowing out of the cork and consequent emission of gasoline vapor from the bottle. The concurrence of the two matters thus specified operated, through the meeting of the gasoline vapor thus released and the exposed gas flame, to occasion the flame which enveloped the

room and caused plaintiff's injuries. Obviously it was essential for the jury to find that defendant was negligent with respect to both of these specifications, and the instruction for plaintiff did not require it to do so.

But one instruction with regard to the right of recovery was given on the part of plaintiff. That instruction is as follows:

"The court instructs the jury that if they believe from the evidence in this case that the plaintiff received the injuries testified to by him by reason of gasoline vapor in one of the defendant's factory rooms taking fire, and that in said factory room there was an unprotected gas flame, and for the purpose of supplying gasoline vapor for the treatment of carbon filaments for electric lamps the defendant provided for each of one or more of its machines a bottle containing gasoline which, with an electric lamp, was enclosed in a box, and that by reason of *said facts* the stopper in the bottle was likely to and often did blow out, thereby increasing the amount of gasoline vapor in the atmosphere in the room, and that by reason of *said facts* the said bottle and light contained in said box was a negligent, dangerous and unsafe contrivance and means for providing gasoline vapor for use in said machines, and that the defendant knew, or by the exercise of ordinary care on its part would have known, *those facts* at and prior to the time the plaintiff was injured and that plaintiff's injuries were directly due to such *negligent, dangerous and unsafe contrivance* and means for providing said gasoline vapor in conjunction with said unprotected gas flame, if you believe there was such unprotected gas flame, and if you further find and believe from the evidence that the burning of said gasoline vapor was occasioned by said unprotected gas flame, then your verdict must be in favor of plaintiff, *provided* you further believe from the evidence that the plaintiff was in the exercise of ordinary care for his own safety." (The italics are our own.)

This instruction is vague and indefinite, in that it omits entirely to define the true issue in the case. The plaintiff's grievance is not merely that there was gasoline vapor emitted in the working place, for such appears to have been the usual course. Indeed, it would seem the work could not be prosecuted without at least a small quantity of such vapor. Therefore, the precise matter of which complaint is made, with respect to the emission of the gasoline vapor which came in contact with the open gas flame and caused the fire, is that defendant maintained a dangerous contrivance, that it was dangerous because the heat from the enclosed electric lamp in the box with the gasoline bottle generated vapor or gas in the bottle to such an extent as to blow out the cork and thus emit a sufficient quantity of gasoline vapor to surcharge the atmosphere and render the ignition resulting in huge flames. This instruction wholly fails to require the jury to find that the cork of the bottle was blown out and the gasoline vapor thus released. In this it is insufficient, for such is the very gravamen of the case, or in other words, the *causa* of plaintiff's injury, when considered in connection with the exposed gas flame under the boiler.

By the first part of the instruction, a number of uncontroverted facts are hypothesized, and then the jury are directed, through reference to the first line of the instruction, that if it believed from the evidence that by reason of "said facts" the stopper in the bottle was likely to and often did blow out, etc. The use of the words "said facts" in this connection is somewhat obscure, for it is certain all of the preceding facts referred to bore no relation to the blowing out of the stopper; but the preceding facts are uncontroverted in the case, and we would not condemn the instruction for this alone, though, as said, it is not clear. This part of the instruction, it seems, requires the jury to find "that the stopper in the bottle was likely to and often did blow out, thereby increasing the amount of

gasoline in the atmosphere in the room, and that by reason of said facts the said bottle and light contained in said box was a negligent, dangerous and unsafe contrivance and means for providing gasoline vapor for use in said machines.'' This is well enough, in that it requires the jury to find such contrivance was a dangerous one and the cork or stopper was likely to and often did blow out of the bottle, but it appears that no finding whatever was required on the crux of the case—that is, that the stopper did blow out and emit gasoline vapor on the occasion in question sufficient to cause the flames which resulted in injury to plaintiff. Of this it is said, the fact that the stopper blew out of the bottle is not controverted in the case, as all of the evidence reveals it, and the instruction should not be condemned for this alone. If this bottle and contrivance were the only possible source of the emission of gasoline vapor in the room, the argument would inhere with considerable force in the circumstances stated, but not so here, for there were several other machines in the room employing gasoline, and essentially some vapor was emitted from each. Moreover, the portion of the identical machine here involved and its companion—that is, the other ''old machine''—emitted gasoline vapor every time the bell-shaped jar on the top of the table was lifted, which appears according to the operation to be frequent. The respondent, in his statement of facts, concedes this to be true, for it is there said ''every time the bell-shaped jar on the old machine was raised up, a certain amount of gasoline gas would be discharged into the atmosphere.'' But there is no complaint with respect to the emission of gasoline gas or vapor from this source or from the other machines in the room. The specifications of negligence and the right of recovery predicates upon the fact that defendant maintained a dangerous contrivance, consisting of a bottle of gasoline and electric lamp in an enclosed box under the table, which operated

to generate gas or vapor with such rapidity and in such quantity as to thrust the stopper from the bottle and emit the gas into the room in such a manner as to occasion ignition, when coming in contact through the atmosphere with the exposed gas flame under the boiler.

It is entirely clear that, on a specification of negligence with respect to this matter, plaintiff is not entitled to recover on account of the emission of gasoline vapors from other machines, touching which no averment of negligence appears. Therefore, though it be that the evidence is uncontradicted that the stopper did blow out of the bottle twice immediately before the explosion, it is not conceded in the case that the gas thus emitted through the alleged negligent contrivance occasioned the flames which burned plaintiff, for it may be that such flame would have come about as well from the vapor being emitted by the other machines and through the raising of the bell-shaped glass jar on the table over the alleged offending, and its companion, machine. This being true, it is manifest that the generation of gasoline gas or vapor in the bottle, through the alleged negligent contrivance of the bottle and electric lamp enclosed in the box, the blowing out of the stopper because of it, and the sudden emission of a quantity of gas constitute, in part, the very gravamen of plaintiff's case, for it is this co-operating together with the open gas flame in the room which the petition avers caused the injury. Therefore, it is, of course, essential for the jury to find that plaintiff's injuries resulted in part from the cause so averred, for where specific acts of negligence are alleged it is essential to confine the case thereto. [See McManamee v. Missouri Pac. R. Co., 135 Mo. 440, 447, 37 S. W. 119.] In other words, in such cases the instructions should submit to the jury the issues they are to try. It will not suffice to permit a recovery on any unspecified theory of negligence whatsoever, but the jury should find the fact which constitutes the

·gravamen of the charge laid. [Allen v. St. Louis Transit Co., 183 Mo. 411, 81 S. W. 1142.] The mere finding required by the instant instruction—that is, the fact that the contrivance was a dangerous one and that the stopper in the bottle was likely to and often did, blow out, increasing the amount of gasoline vapor in the atmosphere—avails naught in the case, without a further finding that the stopper did blow out and that, because of that fact, such dangerous contrivance did emit the 'gasoline vapor and gas which, commingling with other gas present, was ignited by the flames and occasioned the injury.

The instruction employs the words "said facts" in several places, as before said, which would seem to imply that the matters preceding this expression were conceded as facts and not at issue in the case. However, it may be said of this that so many of the facts in the case are uncontroverted that this alone might not amount to reversible error, in so far as the employment of the first two expressions of "said facts" is concerned. The third reference complained of in the instruction is to "those facts." In the latter part of the instruction, after having required the jury to find that defendant knew of the condition, it proceeds "or by the exercise of ordinary care on its part, would have known 'those facts' at and prior to the time plaintiff was injured and that plaintiff's injuries were directly due to such *negligent, dangerous and unsafe contrivances.*" The words underscored when considered in the context employed together with the statements of "said facts" and the subsequent statement of "those facts" immediately preceding them seem to assume that the contrivance was negligent, dangerous and unsafe. At any rate, these words thus employed were likely to mislead the jury, in view of the general, vague and indefinite frame of the instruction, to believe that the contrivance was a negligent and dangerous one, whether or no. Such an assumption in an instruction

with respect to issuable facts is always condemned as reversible error, as will appear by reference to James v. Missouri Pac. R. Co., 107 Mo. 480, 481, 485, 18 S. W. 31.

For the reasons above pointed out, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.